[No. D058003. Fourth Dist., Div. One. Dec. 10, 2010.]

KEVIN R., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

**COUNSEL**

Children's Law Center of Los Angeles, Martha Matthews, Tyson B. Nelson; Dependency Legal Group of San Diego, Robert Gulemi and Kelley James for Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Tahra C. Broderson, Deputy County Counsel, for Real Party in Interest.

Dependency Legal Group of San Diego and Tilisha Martin for Minor.

## OPINION

**HALLER, J.**—Kevin R. seeks review of a juvenile court order setting a hearing under Welfare and Institutions Code[1] section 366.26. He contends the court erred when it found that reasonable services were offered or provided to him, and terminated reunification services. We deny the petition.

### INTRODUCTION

Kevin R. is a registered sexual offender whose parole conditions prohibited him from having any contact with children, including his daughter, A.R., who was born after Kevin was released from prison. Seven months after the San Diego County Health and Human Services Agency (the Agency) initiated dependency proceedings, Kevin obtained a modification of his parole conditions allowing him to have supervised visits with A.R. once a week at Child Welfare Services offices (CWS). Approximately six weeks later, the court expressed concern about Kevin coming into contact with other children at CWS and the social worker interpreted the court's remarks as an order suspending visitation. Visits were suspended for two months until county counsel discovered the error. The contested six-month review hearing, which had been continued for more than three months, was held five weeks after visitation resumed.

Kevin argues the juvenile court unlawfully delegated its authority to order visitation to the parole officer, violating his due process and statutory rights to visit his child. He also argues the court's finding that there was no substantial probability of returning A.R. to his care by the 12-month review date is not supported by substantial evidence. Kevin further contends he did not receive reasonable visitation services because the social worker did not help him obtain a modification of his parole conditions and erroneously suspended his visits for two months. Finally, Kevin asserts his due process rights were

---

[1] Unless otherwise specified, further statutory references are to the Welfare and Institutions Code.

violated when the court allowed his parole condition to function as an absolute bar to family reunification.

We conclude that, notwithstanding the directive under section 362.1, subdivision (a) to order visitation that is as frequent as possible, consistent with the well-being of the child, the juvenile court may not order visitation that contravenes a lawful condition of parole imposed on a parent of a dependent child. Accordingly, a parent seeking a modification of a condition of parole must petition the Board of Prison Terms[2] or bring a habeas corpus petition in the appropriate court, if necessary.

We also determine there is substantial evidence to support the findings there was no reasonable probability of returning A.R. to Kevin's care by the 12-month review date, the social worker offered or provided reasonable reunification services to the petitioner, and the social worker did not have the obligation to intercede in the father's parole modification proceedings. Further, we conclude there was substantial evidence, independent of the constraints placed on the petitioner by his parole conditions, to support the court's decision to terminate reunification services and, in any event, the court may properly consider a parent's parole conditions when fashioning orders in the best interests of his or her child.

## FACTUAL AND PROCEDURAL BACKGROUND

Kevin R. and Renee M.[3] are the parents of A.R., who was born in June 2009. Renee had a history of mental illness, homelessness, substance abuse and prostitution and other criminal activity. Kevin did not have any identified mental health or substance abuse issues; however, he had been convicted of assault with a deadly weapon in 1997 and a sex crime involving a 13-year-old girl in 1999.[4] Kevin was released from prison in 2008 after serving more than nine years of an 11-year sentence. He is on parole until August 2011. At the time of A.R.'s birth, as a condition of parole, Kevin was not permitted to have contact with any children, including his own child (no-contact provision).

---

[2] The Board of Prison Terms is an "executive parole agency" that is an arm of California's Department of Corrections and Rehabilitation. (*In re Roberts* (2005) 36 Cal.4th 575, 588 [31 Cal.Rptr.3d 458, 115 P.3d 1121].) For convenience, we refer to the Board of Prison Terms as "Board" and to California's Department of Corrections and Rehabilitation as CDCR.

[3] Renee did not file a writ petition and is mentioned only when necessary. She was intermittently incarcerated throughout the proceedings. At the time of the six-month review hearing, she was preparing to serve a three-year term in state prison.

[4] Although the Agency reported Kevin was convicted under Penal Code section 289, subdivision (a) (sexual penetration by force), his parole documents listed his commitment offense as a conviction under Penal Code section 288, subdivision (a) (lewd and lascivious acts with a child). Kevin was required to register as a sex offender. (Pen. Code, § 290.)

In August 2009, the Agency filed a three-count dependency petition alleging A.R. was exposed to violent confrontations between Renee and a roommate and Renee was using marijuana to excess (§ 300, subd. (b)), and Renee had left A.R. with Kevin, who was a registered sex offender (§ 300, subd. (d)).

The day after A.R. was detained in protective custody, Kevin informed a social worker that his parole officer had advised him to go to court to modify the parole condition prohibiting contact with children. The next day, Kevin told another social worker that he was initiating the process to modify the no-contact provision.

At the detention hearing, the court ordered "Father to have liberal supervised visitation, with concurrence of his parole officer."

The parents submitted to jurisdiction under section 300, subdivision (b), and the court ordered a plan of family reunification services. Kevin's case plan required him to complete a parenting program and participate in therapy focused on sexual abuse issues. The court modified the previous visitation order to permit the social worker to lift supervision of visits and allow Kevin to have overnight visits with A.R., with the concurrence of minor's counsel.

On March 4, 2010, Kevin obtained a modification of his parole conditions, which allowed him to visit A.R. weekly for one and one-half hours under supervision at CWS. Kevin consistently visited A.R. He enjoyed spending time with her and asked for guidance when she cried.

On April 29, 2010, at a pretrial status conference for the six-month review hearing, the social worker informed the court (Judge Yvonne E. Campos) that the parole officer had modified the no-contact provision to allow Kevin to visit A.R. at CWS.

The court, concerned that the visits were taking place at CWS, stated "that makes no sense [whatsoever] because you have lots of children coming and going from there. And if he's ordered by parole to not be near any other children whatsoever due to his registration, then that's not an appropriate place to have those supervised visits."

The social worker interpreted the court's remarks as an order not to allow Kevin to visit A.R. and suspended visitation. After approximately two months, the Agency noticed the error. Kevin's visits with A.R. were reinstated on July 9, 2010.

After several continuances, the contested six-month review hearing was held on August 16, 2010. Kevin was not present. The court (Judge Laura J.

Birkmeyer) admitted the Agency's reports and addendums, and the transcript of the April 12, 2010 pretrial settlement conference, in evidence. Kevin, Renee and A.R. waived their rights to cross-examine the social worker and did not present any affirmative evidence.

The Agency reported that Kevin was attending sex offender group therapy, which was required by parole. His therapist stated that Kevin was doing well in the program and had not disclosed anything that would cause concern. The social worker referred Kevin to a parenting program on November 9, 2009; however, Kevin did not attend classes at that time because he was working a second job. He began a parenting program in late spring 2010, and attended three classes before summer break. He intended to continue the classes when they resumed. During the first six-month review period, Kevin lived out of his car for a short time before renting an apartment in June.

The court found that Kevin had made a concerted effort to modify his parole conditions to permit him to visit A.R. There was nothing problematic with Kevin's interactions with A.R. and the Agency made an unfortunate mistake when it suspended visitation in May and June. The court determined Kevin made good, but not substantive, progress with his case plan. Kevin regularly participated in group treatment for sexual offenders without any negative reports. Although no one faulted Kevin for wanting to work, he did not make successful progress with his parenting program. The court found that although services were not perfect, under all the circumstances, including Kevin's status as a registered sex offender, the Agency offered or provided reasonable services to Kevin.

The court also found that there was not a substantial probability A.R. would be returned to parental custody by October 19, 2010, the date of the 12-month status review, which was two months after the six-month review hearing. The court stated it could not place A.R. with Kevin while he was on parole, and Kevin's parole officer had indicated he would not grant any further modifications of the parole conditions to permit additional visitation. The court terminated reunification services and set a section 366.26 hearing.

Kevin petitions for review of the court's order under California Rules of Court, rule 8.452.[5] He requests this court reverse the order setting a section 366.26 hearing. On September 3, 2010, this court issued an order to show cause and the Agency responded. This court heard oral argument on December 7, 2010.

---

[5] All rule references are to the California Rules of Court.

## DISCUSSION

Kevin argues he did not receive reasonable visitation services because the court improperly delegated its authority to order visitation to the parole officer, and the social worker did not assist him to obtain a modification of the parole condition limiting his visitation with his daughter. Kevin asserts substantial evidence does not support the finding there was not a substantial probability of returning A.R. to his care by the 12-month review date. He also contends the court violated his due process rights by terminating reunification services solely on the basis of a parole condition restricting his visitation.

I

### *VISITATION IN DEPENDENCY PROCEEDINGS IS SUBJECT TO THE LIMITATIONS IMPOSED BY A PAROLEE PARENT'S CONDITIONS OF PAROLE*

■ Kevin's contentions implicate two legal frameworks—the parole system and dependency proceedings. Kevin focuses on dependency law, which favors a liberal visitation policy, without discussing the constraints that may be imposed on a parolee, including prohibiting contact with children, including the parolee's own child. As we explain, the Board, a division of the CDCR, has the legal authority to impose conditions on a parolee that may restrict his or her contact with children. Those conditions are not superseded because a parolee is involved in dependency proceeding involving his or her own child. The remedy to modify a parole condition that impacts a parent's ability to visit his or her own child is to seek administrative remedies through the Board or file a habeas corpus petition in the appropriate court, if necessary. (Pen. Code, §§ 1473, 5077.)

"[A] grant of parole is an integral part of the penological system intended to help those convicted of crime to integrate into society as constructive individuals as soon as possible and alleviate the cost of maintaining them in [custody]." (*People v. Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313].) Although released from prison, " 'a parolee is still constructively a prisoner subject to correctional authorities.' " (*In re Hudson* (2006) 143 Cal.App.4th 1, 9 [49 Cal.Rptr.3d 74], quoting *People v. Lewis* (1999) 74 Cal.App.4th 662, 669–670 [88 Cal.Rptr.2d 231].)

The power to grant parole, including setting parole conditions, is vested in the Board, not the courts. (*In re Prather* (2010) 50 Cal.4th 238, 254–255 [112 Cal.Rptr.3d 291, 234 P.3d 541]; *In re Schoengarth* (1967) 66 Cal.2d 295, 300 [57 Cal.Rptr. 600, 425 P.2d 200].) The Board has expansive authority to impose any parole conditions deemed proper. (Pen. Code, § 3052; *In re E.J.*

(2010) 47 Cal.4th 1258, 1283, fn. 10 [104 Cal.Rptr.3d 165, 223 P.3d 31].) "[T]he parolee's commission of a crime 'justifies imposing extensive restrictions on the individual's liberty.' [Citation.]" (*In re Corona* (2008) 160 Cal.App.4th 315, 320 [72 Cal.Rptr.3d 736].) The power to grant and revoke parole is vested in the Board, not the courts; thus the proper function of the courts with respect to parole and parole revocation is simply to ensure that the prisoner is accorded due process. (*In re Roberts, supra*, 36 Cal.4th at pp. 590–591.) Although the courts have the power to pass on the constitutionality or validity of parole conditions and may require their modification, it is for the Board to decide the precise scope and terms of modified parole conditions. (*Ibid.*)

A parolee retains constitutional protection against arbitrary and oppressive state action. (*In re E.J., supra*, 47 Cal.4th at p. 1283, fn. 10, citing *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 874 [76 Cal.Rptr.2d 841].) A parole condition that bars lawful activity is valid only to the extent "the prohibited conduct either 1) has a relationship to the crime of which the offender was convicted, or 2) is reasonably related to deter future criminality." (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1234 [15 Cal.Rptr.3d 168].)

■ The Board has the authority to modify parole conditions on a parolee's request for reconsideration of parole length or conditions. (Pen. Code, § 5077.) A parolee may bring a habeas corpus proceeding challenging his or her parole conditions to superior court, appellate court and the Supreme Court, which have original jurisdiction to hear a habeas corpus proceeding relating to parole. (Pen. Code, § 1473; *People v. Villa* (2009) 45 Cal.4th 1063, 1069–1070 [90 Cal.Rptr.3d 344, 202 P.3d 427]; *In re Roberts, supra*, 36 Cal.4th at p. 593 [a habeas corpus petition challenging a decision of the Board should first be filed in the superior court]; see, e.g., *In re E.J., supra*, 47 Cal.4th at pp. 1283–1284.) In contrast to those courts that have original habeas corpus jurisdiction, the juvenile court is a superior court exercising limited jurisdiction arising out of juvenile law. (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075].)

## II

### *THE JUVENILE COURT DID NOT IMPROPERLY DELEGATE ITS VISITATION AUTHORITY TO THE PAROLE OFFICER*

Kevin contends the juvenile court violated his due process rights when it unlawfully delegated its visitation authority to the parole officer, rendering visitation illusory and precluding family reunification. The Agency disagrees,

arguing that Kevin forfeited this issue by not raising it at trial and, in any event, there was no due process violation. We agree with the Agency's position.

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings. [Citations.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222 [33 Cal.Rptr.3d 337].) A party may not assert theories on appeal which were not raised in the trial court. (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1489 [82 Cal.Rptr.2d 359].)

The record shows that not only did Kevin fail to assert that the juvenile court had improperly delegated its visitation authority to the parole officer, at the six-month review hearing, he acknowledged his visitation with A.R. was subject to parole conditions and the court could not control the restriction on visitation.

Accordingly, Kevin has forfeited the right to assign error on appeal. However, even if the doctrine of forfeiture did not apply, we would reject Kevin's claim the court violated his due process right to a continued relationship with his child when it unlawfully delegated its visitation authority to the parole officer. (*In re Dakota H., supra*, 132 Cal.App.4th at p. 222.)

The record reflects the court ordered the Agency to provide liberal supervised visitation to Kevin, with the concurrence of the parole officer, and later gave the social worker the discretion to allow unsupervised and overnight visits, with the concurrence of minor's counsel.

In a dependency proceeding, the juvenile court has an obligation to order visitation between a parent and his or her child that is "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A); see *In re Alvin R.* (2003) 108 Cal.App.4th 962, 972 [134 Cal.Rptr.2d 210].) This directive is limited by the provision that "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) Further, established case law states the juvenile court may not delegate its authority to determine whether any parent-child visitation will occur to another person or an entity that has *no legal authority* to determine visitation between a parent and child. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317–318 [3 Cal.Rptr.3d 465] [the court violates the separation of powers doctrine when it abdicates its power to grant or deny visitation to a third party such as a social worker, therapist or the child]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48–49 [81 Cal.Rptr.2d 354] [court abused its discretion when it essentially

delegated judicial power to decide visitation to the dependent children]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476 [68 Cal.Rptr.2d 714] [court improperly delegated its visitation authority to children's therapists]; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757 [270 Cal.Rptr. 326] [juvenile court may not delegate its power to grant or deny visitation to the social services agency]; see generally *In re James R.* (2007) 153 Cal.App.4th 413, 435–436 [62 Cal.Rptr.3d 824].)

■ This case is not commensurate with those cases that have held the juvenile court may not delegate its authority to a third party to determine whether visitation should occur. As we explained in part I, *ante,* the Board is vested with the legal authority to impose conditions of parole. If the parole condition has a relationship to the offender's criminal conviction or is reasonably related to deter future criminality, the Board may limit a parolee parent's contact with children, including his or her own child. (Pen. Code, § 3052; *In re Prather, supra,* 50 Cal.4th at pp. 254–255; *In re Schoengarth, supra,* 66 Cal.2d at p. 300; *In re E.J., supra,* 47 Cal.4th at p. 1283, fn. 10; *People v. Corona, supra,* 160 Cal.App.4th at p. 320; *In re Stevens, supra,* 119 Cal.App.4th at p. 1234.) A parent may challenge such a condition by seeking a modification from the Board and, if necessary, by filing a habeas corpus petition in a court with original jurisdiction to hear the matter. (Pen. Code, §§ 1473, 5077.)

■ The juvenile court acted within its authority when it ordered visitation to occur with the concurrence of Kevin's parole officer. Kevin was still constructively a prisoner subject to correctional authorities. (*In re Hudson, supra,* 143 Cal.App.4th at p. 9.) Correctional authorities determined that the condition restricting Kevin's contact with children, including A.R., was rationally related to Kevin's sexual offense against a 13-year-old girl. Except for his request for modification as it relates to his own child, the record does not show that Kevin has challenged the validity of the condition. (*In re Stevens, supra,* 119 Cal.App.4th at p. 1234.) Kevin's circumstances are analogous to those cases in which a parent is in local custody or seeks admission to the Community Prisoner Mother Program (CPMP). The juvenile court's authority in such circumstances is limited. It cannot order a sheriff to expand minimum visitation hours at a county jail to permit a parent to have liberal visitation with his or her child,[6] direct CDCR to admit an incarcerated mother to the CPMP to facilitate family reunification,[7] or contravene a parole condition limiting a parent's contact with his or her child.

---

[6] See *Bell v. Wolfish* (1979) 441 U.S. 520, 547–548 [60 L.Ed.2d 447, 99 S.Ct. 1861] (courts should ordinarily defer to expert judgment of prison administrators to maintain institutional security); California Code of Regulations, title 15, section 1062 (setting minimum visitation standards for jails).

[7] See Penal Code section 3417 (CDCR determines if applicant meets criteria for admission to CPMP); section 361.5, subdivision (e)(3) (court determines whether parent's participation in

Although Kevin has forfeited the argument on appeal, we nevertheless conclude that the juvenile court did not err when it ordered liberal supervised visitation between Kevin and A.R., subject to the authority of the Board to set parole conditions for persons under its control.

We discuss Kevin's other claims relating to the limitations on visitation imposed by his conditions of parole within the context of the juvenile court's findings and orders at the six-month review hearing.

III

*TERMINATION OF REUNIFICATION SERVICES*

Kevin contends the juvenile court erred in finding there was no substantial probability of returning A.R. to his custody by the 12-month review date. He argues the court's finding was based solely on speculation the parole officer would not modify parole conditions to permit him to have additional visitation or custody of A.R. Kevin also contends the court erred when it found that he received reasonable reunification services. He further argues his due process rights were violated when the court allowed his parole condition to function as an absolute bar to family reunification.

A

*Substantial Evidence Supports the Finding There Is No*
*Substantial Probability of Return*

■ If the child is not returned to parental custody at the six-month review hearing and is under three years of age, the court may set a section 366.26 hearing if it finds by clear and convincing evidence the parent failed to participate regularly and make substantial progress in a court-ordered treatment plan. (§ 366.21, subd. (e).) If, however, the court finds there is a substantial probability the child may be returned to his or her parent within six months or that reasonable services have not been provided, the court is required to continue the case to the 12-month permanency hearing. (*Ibid.*)

We review an order terminating reunification services to determine if it is supported by substantial evidence. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1020 [41 Cal.Rptr.2d 762].) In making this determination, we review the record in the light most favorable to the court's determinations

---

CPMP is in child's best interest and is suitable to meet needs of parent and child); compare with *In re Monica C.* (1995) 31 Cal.App.4th 296, 308 [36 Cal.Rptr.2d 910] (court cannot condition visitation between parent and small child on admission to a limited prison program).

and draw all reasonable inferences from the evidence to support the findings and orders. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal.Rptr.2d 315].) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321 [247 Cal.Rptr. 100].)

Kevin does not challenge the juvenile court's finding he failed to participate regularly and make substantial progress in his court-ordered treatment plan. (§ 366.21, subd. (e).) Instead, he focuses on the court's obligation to continue services if it finds there is a substantial probability the child may be returned to his or her parent within six months or that reasonable services have not been provided. (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 846 [69 Cal.Rptr.3d 96, 172 P.3d 402].)

Kevin contends the court's finding that there was no substantial probability of returning A.R. to his custody was based on the social worker's unsworn statement that the parole officer would not permit any further modifications of the limited visitation order. He argues the social worker's statement was speculative and does not constitute substantial evidence.

At the pretrial conference hearing in April 2010, the social worker stated, "When I spoke to the parole officer he stated that he only made that modification just because it was going to be held open and supervised by staff only, but that no further modifications are going to be able to be done. The no-contact order was not going to be able to get lifted." The transcript of the pretrial conference was admitted into evidence at the six-month review hearing. The court's remarks indicated that it considered the social worker's statement in determining whether there was a substantial probability of return by the 12-month review date.[8]

The social worker's hearsay statement was not corroborated. Mere uncorroborated hearsay does not constitute substantial evidence. (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1243 [96 Cal.Rptr.2d 56, 998 P.2d 1019].) However, the record contains substantial evidence other than the social worker's unsworn statement to support the finding there is not a substantial probability

---

[8] In determining there was not a substantial probability of return, the court stated: "[O]ne of the conditions of [Kevin's] parole is that he not have contact with children. Although he's afforded the opportunity to have limited visitation, regular and limited visitation with his child, his parole officer is indicating that that is all that is going to be permitted. [¶] So, based on all the information before the court, it would be pure speculation to believe that father would be early release from parole or that his parole officer would change the position, which has been rather emphatically stated, that he would afford the Father either extensive visitation to include overnights or placement . . . ."

of return. By the time of the pretrial conference hearing, Kevin had not completed a parenting class. Moreover, he did not demonstrate an understanding of basic child care, and relied on others to tell him what to do when A.R. cried. Kevin's therapist stated he did not believe that Kevin was reoffending, but did not state he believed Kevin would be able to safely care for a child within two months' time. Kevin lived out of his car during part of the review period. There is no evidence his living circumstances were, or would be, sufficient to offer a safe and stable home to A.R. by the 12-month hearing date.

In addition, the record permits the reasonable inference that even if Kevin were able to obtain a further modification of his parole conditions, the court could not safely return A.R. to his custody by the date of the 12-month review, which was two months after the date of the six-month review hearing. Kevin's contact with A.R. was limited to one and one-half hours of supervised visitation each week. In view of Kevin's status as a convicted sex offender, A.R.'s best interests would require a substantial period of increased supervised visitation, a demonstration of adequate parenting skills and positive reports from sexual offender therapy before unsupervised visitation could be deemed safe for the child. (§ 362.1, subd. (a)(1)(B) [no visitation order shall jeopardize the safety of the child]; see § 300.2 [the purpose of dependency proceedings is to provide maximum safety and protection for abused and neglected children].)

We conclude there is substantial evidence to support the court's finding there was not a substantial probability of return to parental custody by the 12-month review date.

### B

*There Is Substantial Evidence to Support the Reasonable
Services Finding*

Kevin contends the court erred when it found that the Agency offered or provided reasonable reunification services to him. He argues the social worker failed to assist him to overcome the fundamental barrier to reunification—the parole condition restricting contact with A.R.—and compounded the error when she erroneously suspended visitation for two months. Kevin contends if he had had a lengthy period of consistent, appropriate visitation, the court may not have terminated reunification services at the six-month review hearing.

Family reunification services play a critical role in dependency proceedings. (§ 361.5; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 563 [37

Cal.Rptr.3d 579]; *In re Joshua M.* (1998) 66 Cal.App.4th 458 [78 Cal.Rptr.2d 110]; see 42 U.S.C. § 629a(a)(7).) Visitation between a dependent child and his or her parent is an essential component of a family reunification plan, even if actual physical custody is not the outcome of the proceedings. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 [106 Cal.Rptr.2d 465].)

■ "The adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164 [39 Cal.Rptr.2d 743].) To support a finding reasonable services were offered or provided, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414 [286 Cal.Rptr. 592].)

We review the evidence most favorable to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].)

Under A.R.'s case plan, the social worker had the specific responsibility to refer Kevin to counseling and educational programs consistent with his individual needs for sexual abuse counseling and parenting education. The case plan also stated the social worker would make visitation arrangements only if the parole officer lifted the no-contact order. Beyond these case specific responsibilities, the Agency has the burden to maintain reasonable contact with the parent and assist the parent if compliance with his or her case plan proves difficult. (*In re Riva M., supra,* 235 Cal.App.3d at p. 404; *Robin V. v. Superior Court, supra,* 33 Cal.App.4th at p. 1165; see also §§ 361.5, subd. (a), 366.21, subd. (g)(1) & (3); 42 U.S.C. § 629a(a)(7).)

■ Kevin argues that to facilitate visitation, the social worker had the obligation to assist him to obtain a modification of his parole conditions. He does not support his argument with specific citation to authority, nor does he clearly state in his briefing what he expected the social worker to do with respect to his parole conditions. As we discussed in part I, *ante,* a parolee may request a modification of a parole condition by petitioning the Board for reconsideration and/or by filing a habeas corpus petition in the appropriate court. (Pen. Code, §§ 1473, 5077; *People v. Villa, supra,* 45 Cal.4th at pp. 1069–1070.) The procedures for modifying conditions of parole are well established. A social worker is not a parent's criminal defense attorney and does not have the obligation to intercede in the process of modifying parole conditions on the parent's behalf. At the same time, a social worker may not interfere with a parent's right to seek a modification of a parole condition.

Here, the record shows that Kevin was aware of his responsibility to request a modification of his parole conditions before the detention hearing. An Agency social worker contacted Kevin's parole officer on August 11, 2009, the same day the Agency detained A.R. in protective custody. On August 12, Kevin informed the investigative social worker he had talked with his parole officer and the parole officer had told him he had to go to court to modify the probation condition. On August 13, Kevin told another social worker he was going to petition the court for permission to visit his daughter. In November, the social worker referred Kevin to parenting classes after he inquired about getting his parole condition modified.

The record shows that an Agency social worker was in contact with Kevin's parole officer from the beginning of the case, knew that Kevin was aware of his obligation to obtain a modification of the parole condition if he wished to visit A.R., was informed by Kevin that he was proceeding with a modification and referred Kevin to appropriate services when he called for assistance. Beyond that, the record is silent about the parole modification process and any reason for the six-month delay in securing the modification. Kevin's assertion he would have promptly obtained visitation with A.R. had the social worker helped him to obtain a modification from his parole officer is purely speculative.

Kevin also contends he did not receive reasonable reunification services because the social worker suspended his visitation with A.R. in May and June 2010. The Agency concedes this error but argues the court's reasonable services finding is supported by substantial evidence.

"The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R., supra*, 2 Cal.App.4th at p. 547.)

Kevin was a convicted sexual offender whose contact with his daughter was limited by his conditions of parole. Although the social worker erred when she suspended visitation, because of the delay in holding the contested six-month review hearing, Kevin had five more weeks of visitation with A.R. He received services commensurate with his case plan for approximately 10 months. On this record, Kevin cannot show the court erred when it determined that services were reasonable under the circumstances. (*In re Misako R., supra*, 2 Cal.App.4th at p. 547.)

## C

### *The Court Did Not Terminate Kevin's Reunification Services Solely on the Basis of His Parole Condition*

Kevin contends the court violated his due process rights when it terminated reunification services solely on the basis of a "boilerplate" parole condition unrelated to his offense. Kevin insists the parole condition prohibiting contact with children and limiting visitation with A.R. is not remotely related to the nature of his sexual offense at age 19 with a 13-year-old girl.

■ As we explained in part IIIA, *ante*, the record permits the reasonable inference the court did not terminate Kevin's reunification services solely on the basis of the parole condition restricting his contact with A.R. Therefore, his argument fails in the premise. Further, we see no reason why the juvenile court cannot take into consideration a parolee parent's status and parole conditions when fashioning orders in the best interests of his or her child. (See § 300.2 [the purpose of dependency proceedings is to provide maximum safety and protection for abused and neglected children]; § 362.1, subd. (a)(1)(A) [visitation must be consistent with the well-being of the child]; § 362.1, subd. (a)(1)(B) [no visitation order may jeopardize the safety of the child].)

With respect to Kevin's argument that the termination of reunification services violated his due process rights because the parole condition restricting his contact with A.R. was unrelated to his offense, the record shows that Kevin was convicted of a sexual offense under Penal Code section 288, subdivision (a), and the Board determined the condition prohibiting contact with children, including his own child, was related to the offense. (Pen. Code, § 3052 [the state may impose any condition reasonably related to parole supervision]; *In re E.J., supra,* 47 Cal.4th at p. 1283, fn. 10 [state has expansive authority to impose any parole conditions deemed proper, including limitations on the right to travel, to privacy, or to associate with persons of one's choosing].)

■ We do not have jurisdiction to consider such a challenge, which necessarily would involve factual findings outside the juvenile court record. Moreover, as noted, if a parolee wishes to challenge the lawfulness of a parole condition, including one which restricts contact with one's own daughter, the parolee must do so by seeking a modification through the Board and, if necessary, by filing a habeas corpus petition in a court with original jurisdiction to consider the matter. (Pen. Code, §§ 1473, 5077.) A rule 8.452 proceeding is not an appropriate proceeding in which to challenge conditions of parole. (See rule 8.452(b) [petition is limited to matters in the record].)

## DISPOSITION

The petition is denied. The request for a stay is denied.

McConnell, P. J., and McDonald, J., concurred.