Filed 1/17/14  Eric H. v. Superior Court CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ERIC H., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF TUOLUMNE COUNTY, <br><br> Respondent; <br><br> TUOLUMNE COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F068439 <br><br> (Super. Ct. No. JV7237) <br><br> **O P I N I O N** |

### THE COURT\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  William G. Polley, Judge.  (Retired Judge of the Tuolumne Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Eric H., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

\*       Before Poochigian, Acting P.J., Franson, J., and Peña, J.

Petitioner, Eric H. (father), filed an extraordinary writ petition (Cal. Rules of Court, rule 8.452)[1] regarding his minor child, Devin H. (Devin). Father seeks relief from the juvenile court's order issued at the 12-month review hearing setting a Welfare and Institutions Code section 366.26[2] hearing to consider termination of parental rights.

On review, we conclude father's petition is inadequate because it fails to comply with the procedural requirements of rule 8.452. He fails to allege, let alone make an arguable claim, that the juvenile court committed any error. Therefore, we will dismiss his petition.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 4, 2012, a petition was filed alleging that Devin, then age two, came within the jurisdiction of the juvenile court under section 300, subdivision (b). The petition also alleged, inter alia, the following: In January 2011, and again in May 2011, father physically assaulted Jeanette P. (mother). On both occasions, Devin was in the home. On or about October 2, 2012, mother "disclosed ongoing domestic violence between [her] and [father] in the presence of the child," and stated that father "continues to be verbally and physically abusive."

On November 13, 2012, a jurisdiction hearing was held at which the petition was sustained. On December 4, 2012, at the disposition hearing, and again on May 21, 2013, at the six-month status review hearing, father "[was] ordered to sign and comply with a Dependency Drug Court Family Reunification case plan." The objectives of the plan include that father "not behave in a manner that is verbally, emotionally or physically abusive or threatening …."

---

[1]     All further rule references are to the California Rules of Court.

[2]     All statutory references are to the Welfare and Institutions Code.

2

The "Twelve Month Review Report" (unnecessary capitalization and emphasis omitted) prepared by social worker Ashley Rice, filed November 21, 2013, and read and considered by the court in advance of the 12-month review hearing, states, inter alia, as follows: "Both parents continue to deny any responsibility for the situation their family is currently in and minimize the circumstances that brought them to this point." "Although it is evident that [father] has been able to abstain from substance use throughout this reporting period, participated in services and appears motivated to reunify with his son, there continues to be concerns regarding [father's] ability to provide stable care to his son that is free from aggressive or threatening behaviors. [¶] [Father] was not consistent in meeting his case plan requirements. For instance, [he] was provided with multiple opportunities to address his mental health issues. However, [father] continued to engage in verbal altercations with service providers and his peers. [Father] did not acknowledge his inappropriate behaviors and became defensive and combative when the issues were addressed with him. [Father] not only failed to take responsibility for his actions, but he also failed to demonstrate any insight into how his past and current actions have affected his son. One factor that led to Child Welfare Services (CWS) involvement with this family was [father's] aggression and inability to control his impulses and behaviors. It is very concerning [father] continued to engage in this type of behavior, given his participation in twelve months of court ordered services."

At the 12-month review hearing, social worker Rice testified to the following: Father "denies any domestic violence has taken place between he and [mother]." Rice "do[es] not believe that [father] is addressing the [domestic violence] issues." Father has "[not] made substantial progress in his addressing CWS's concerns with regard to domestic violence." He "continued to engage in verbally abusive and threatening behavior throughout this case, and is currently still displaying these behaviors." In telephone conversations, father "yelled at and threatened" Rice, and "this took place with

3

other … service providers." Members of therapy groups in which father participated reported that father left voice mail messages in which he threatened "that they would be physically harmed if X, Y, Z didn't stop happening, something to that effect." Such conduct by father "does not follow [the] case plan objective" that he "not behave in a manner that is verbally, emotionally, physical or sexually abusive or threatening."

Father was "involved in parenting classes through [Infant Child Enrichment Services (ICES)]." He "dealt" with Cassie Ackers in that program. Ackers "terminated services" to father after five months because "[s]he no longer felt safe or comfortable providing the services to [father]."

At one point in the hearing, the court, after noting that father had interrupted a witness who was testifying, and he had done so previously in the hearing, stated, "I don't want that to happen again." Later, father interrupted the deputy district attorney during closing argument, at which point the court directed the bailiff to remove father to the jury room. Father was later returned to the courtroom and thereafter, while the court was speaking, father interrupted again. The court cautioned father, and shortly thereafter concluded the hearing.

## DISCUSSION

The purpose of writ proceedings such as this is to facilitate review of a juvenile court's order setting a section 366.26 hearing to select and implement a permanent plan for a dependent child. (Rule 8.450(a).) A court's decision is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is up to the petitioner in such proceedings to raise specific issues and substantively address them. (§ 366.26, subd. (*l*).) This court will not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Father states the following grounds for his claim that the challenged order is erroneous: "My statement was false [be]cause of being in shock [due] to slander from

4

my social worker and [Cassie] Ackers.  Who have no hon[o]r for their job tit[le]s.  My yes's were no's, no's were yes's." [*Sic*.]  The remainder of his petition, as best we can determine, consists of attacks on the credibility of Rice and Ackers.  Father fails to raise specific issues and substantively address them.

To the extent father means to argue that the court erred in terminating reunification services because he has made significant progress in resolving the problems that led to Devin's removal, that contention is without merit.

The court may not extend reunification services absent a finding of a substantial probability the child will be returned to the parent's physical custody within 18 months of removal.  (§ 366.21, subd. (g)(1).)  That finding, in turn, depends on three subordinate findings, including the finding that the parent made "significant progress" on the problems that led to removal (§ 366.21, subd. (g)(1)(B).)

"We review an order terminating reunification services to determine if it is supported by substantial evidence.  [Citation.]  In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders.  [Citation.]  'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'  [Citation.]"  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689.)

Here, the court found that father's progress was "minimal."  As demonstrated above, there was ample evidence that father has shown an inability to control his anger and refrain from verbal attacks.  This evidence, in turn, supports the conclusion that father has not made significant progress on the problems that led to Devin's removal.

## DISPOSITION

The petition for extraordinary writ is dismissed.  This opinion is final forthwith as to this court.

5