Filed 9/12/24  In re A.E. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.E., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083314 |
| Plaintiff and Respondent, | (Super.Ct.No. J295144) |
| v. | OPINION |
| J.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

J.D. (mother) appeals from the juvenile court's reasonable services finding at the 12-month review hearing in December 2023 for her then five-year-old daughter, A.E. (See Welf. & Inst. Code, § 361.5, subd. (a); all further undesignated statutory references are to this code.) As we explain, we affirm the finding.

FACTUAL AND PROCEDURAL BACKGROUND

In late November 2022, police officers responding to a welfare check at mother's home arrested her for possession of drug paraphernalia within A.E.'s reach. The reporting party heard screams, which mother attributed to a confrontation with A.E.'s father (father). Father was not present when the officers arrived, and he later denied having been there. Social workers took custody of A.E. at the police station when mother could not provide a safe caretaker.

A.E.'s maternal grandfather indicated mother "used to" use heroin and suggested father "got [her] back into" using drugs. Mother gave contradictory accounts of her drug use: she denied using methamphetamine since A.E.'s birth, but then admitted smoking it the day before her arrest; she claimed she had resumed using methamphetamine only in the past month. Father denied using drugs or engaging in domestic violence with mother.

The county children and family services agency (CFS or agency) filed a dependency petition based on allegations that the parents' drug use and domestic violence endangered A.E. (§ 300, subd. (b).) The juvenile court at the detention hearing sustained A.E.'s continued placement with foster caretakers. The court ordered reunification services pending development of a case plan. In the meantime, the court ordered drug

2

and alcohol testing for the parents. The court expressly informed mother and father that "failure to drug test as ordered will be deemed a positive test."

The agency's report for the jurisdiction and disposition hearing in mid-December 2022 recounted that mother again gave contradictory responses regarding her drug use. She denied using anything but Xanax, and said even that was "a long time ago." Regarding her failed drug test the week before, mother explained she had a toothache and "took some Norcos" left over from an old prescription. Mother did not remember telling the social worker after her arrest that she recently used methamphetamine. She denied prior heroin addiction. She had started on methadone within the last week, but that was "because of my back and toothache." When the social worker encouraged honesty, mother became emotional and cried. She denied heroin use but admitted using methamphetamine, though "not . . . often."

Mother said the paraphernalia at her home belonged either to father or his friend, but also denied father had any history of drug use. Father missed his drug test; he initially claimed he had not used marijuana since he was "a kid," but then admitted he might test positive from recent use. Father said the paraphernalia the police discovered was his friend's. The social worker's review of court records showed the possession charge against mother had been dismissed.

The juvenile court sustained the dependency petition, ordered reunification services, and set a six-month review hearing. The case plan approved by the court required mother to "[s]tay free from illegal drugs and show your ability to live free from

3

drug dependency. Comply with all required drug tests." In addition to attending "random and/or on demand" testing and other reunification service referrals, mother was ordered to "complete a CFS approved drug treatment program" on an outpatient basis. Mother's case plan specified it was her responsibility to "provide a copy of the Certificate of Completion to your assigned CFS social worker upon successful completion of the program." In ordering reunification services at the disposition hearing, the court urged mother and father: "[W]hat you need to do is get engaged in those programs and show progress," as well as "make sure . . . that you remain in good contact with [your] social worker," including "updat[ing] him or her regarding your progress."

By the time of the six-month review hearing, mother missed six drug tests and tested positive on all seven others. She did not appear for the hearing. Nor did she update the social worker on her enrollment, attendance, or progress in her drug treatment program. She had, however, provided the social worker certificates of completion for her domestic violence and parenting education programs. She also attended eight individual counseling sessions, and CFS renewed that referral. The court characterized mother's progress as "moderate," found CFS provided reasonable reunification services to date, ordered the reunification period held open for mother with continued services, and set a 12-month review hearing.

CFS's report for the 12-month review hearing summarized that, "despite various [social worker] conversations regarding the importance of testing and engaging in services," mother regressed. She showed some initiative at first, attending six individual

4

counseling sessions, but she did not complete the counseling referral. Her visitation with A.E. was inconsistent. Nor did she drug test.

Midway through the 12-month review period, mother inquired about legal guardianship for A.E. rather than reunification. The social worker encouraged mother to renew her efforts, reminding her that she "still had services" and thus the opportunity to reunify with A.E. The worker reminded mother about the steps in the dependency process, including explaining guardianship, and "expressed" to mother that she "should engage in her services during this reporting period [in order] to reunify with . . . [A.E.]." Mother did not do so. She did not attend the remaining sessions of her individual counseling referral. She missed all of her drug tests as a "no show" each time, which the social worker summarized as mother "not consent[ing] to any random or on-demand testing as required."

Also midway through the review period, A.E. moved from a failed placement with a maternal aunt back to a temporary placement with a foster family, while a permanent home was sought for her.

Neither mother nor father appeared at the 12-month review hearing. The court found neither parent made substantive progress in their respective case plans to address the issues necessitating dependency. The court found CFS provided reasonable reunification services. The court terminated those services, concluded a permanent plan of adoption or guardianship remained the goal for A.E., but decided it was not in A.E.'s

best interests at that time to schedule a section 366.26 hearing for possible termination of parental rights.

DISCUSSION

Mother challenges the juvenile court's reasonable services finding. She contends CFS did not do enough to aid her in addressing her substance abuse problems, and therefore the court's contrary finding must be reversed. We disagree.

Removal of a child from parental custody generally requires the juvenile court to order reunification services. (§§ 361.5, subd. (a), 362, subds. (c), (d); *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 (*Michael G.*).) Those services "'implement "the law's strong preference for maintaining the family relationships if at all possible."'" (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.)

In turn, to effectuate the juvenile court's order, the social services agency "'must make a good faith effort to develop and implement a family reunification plan.'" (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.) "The adequacy of reunification plans and the reasonableness of the [agency's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.)

6

Our review is under the deferential substantial evidence standard. (*In re Christina L.* (1992) 3 Cal.App.4th 404, 414.) We consider the record in the light most favorable to the court's finding and draw from the evidence all reasonable inferences in support of the ruling. We do not reweigh the evidence or exercise independent judgment, but instead determine whether sufficient facts support the court's conclusion. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689 (*Kevin R.*).) The appellant bears the burden to show the evidence is insufficient. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Mother asserts the agency's efforts to help her deal with her substance abuse issues "were sorely lacking." She acknowledges her missed and failed drug tests, but contends "there is no indication that the social worker tried to accommodate Mother's schedule, visited Mother at her home, followed up on the one outpatient referral, or made additional recommendations or referrals concerning outpatient, or perhaps even inpatient[,] services based on Mother's unique needs."

We are not persuaded. The record gives no indication mother's failure to attend drug tests or her outpatient treatment program stemmed from her schedule, anything a home visit might resolve, or unique needs requiring her social worker's assistance. Nor does she identify any inpatient admission criteria or otherwise show she was eligible for such services or that they were available or suitable. Mother thus does not meet her burden to show insufficient services. This is not a case like the one on which mother relies, in which the social worker set the parent up for failure with repeated referrals to

7

unavailable therapists, including the last one being in a dangerous neighborhood, whereupon the mother on her own initiative found a substitute. (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1243-1244, disapproved on another ground in *Michael G.*, *supra*, 14 Cal.5th at p. 631, fn. 8.)

Instead, mother's challenge is based on post hoc, "purely speculative" measures (*Kevin R.*, *supra*, 191 Cal.App.4th at p. 692) that CFS arguably might have undertaken. "The standard," however, "is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

The juvenile court could find the agency's services reasonable here where mother's drug testing regimen and outpatient drug program were tailored to a cause of A.E.'s dependency. Also, belying mother's claim that CFS did not keep reasonable contact with her, the record reflects social worker attempts at "various conversations [with mother] regarding the importance of testing and engaging in services." Mother argues "there is no indication" these "services" conversations were "follow[] up . . . regarding the outpatient treatment referral," but as noted we must make every inference in favor of the court's ruling, not against it as mother does.

In the end, the agency is correct that "[t]he requirement that reunification services be made available to help a parent overcome those problems which led to the dependency of his or her minor children is not a requirement that a social worker take the parent by

the hand and escort him or her to and through classes or counseling sessions." (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.)

DISPOSITION

The juvenile court's reasonable services finding is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.


We concur:


CODRINGTON
J.


FIELDS
J.