Filed 11/6/25  T.N. v. Superior Court CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| T.N.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>        Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>        Real Party in Interest. | F090285<br><br>(Super. Ct. No. JD145869-00)<br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Christie Canales Norris, Judge.

Law Office of Michelle R. Trujillo and Michelle R. Trujillo, for Petitioner.

No appearance for Respondent.

---

[*]      Before Hill, P. J., Levy, J. and Fain, J.[†]

[†]      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kendra L. Graham, Interim County Counsel, and Raymond J. Aubele, Jr., Deputy County Counsel, for Real Party in Interest.

-ooOoo-

T.N. (mother), through counsel, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's order issued at a combined six- and 12-month review hearing (Welf. & Inst. Code, § 366.21, subds. (e) & (f))[2] terminating her reunification services and setting a section 366.26 hearing for December 12, 2025, as to her now one-year-old son, Sebastian C. (the child).  In her petition, mother contends the court erred when it denied her request for continued family reunification services.  Mother also requests a stay of the pending section 366.26 hearing.  We disagree and affirm.

## PROCEDURAL AND FACTUAL SUMMARY

### *Initial Removal*

In May 2024, the child was taken into protective custody shortly after his birth by the Kern County Department of Human Services (department).  The department filed an original petition alleging the child was described by section 300, subdivision (j).  The petition alleged the child's sibling, J.G., previously suffered severe dehydration due to mother's neglect in February 2022.  The petition further alleged the child would be similarly abused or neglected.  Mother's parental rights for the sibling were terminated, and the sibling's adoption was finalized.  On May 20, 2024, the juvenile court ordered the child detained, and it set a jurisdiction and disposition hearing for July 15, 2024.

---

[1]     All further rule references are to the California Rules of Court.

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

*Jurisdiction and Disposition*

The department's jurisdiction report recommended that the allegations in the petition be found true. The report detailed the facts surrounding the department's investigation. The social worker interviewed mother at the hospital room while she was recovering from the child's birth. Mother claimed she was in a bad mental state and not getting adequate sleep at the time of J.G.'s removal. Mother reported waking up to J.G. gasping for air because she " ' was stubborn and did not listen to what people were telling her.' " Mother also disclosed a diagnosis of depression and past domestic violence. She attributed her failure to reunify with J.G. to homelessness and depression.

The disposition report recommended that the child remain in out-of-home care and family reunification services not be provided to mother pursuant to section 361.5, subdivision (b)(11). Family reunification services were recommended for the child's father, S.C. (father). The child was placed in the home of a relative care provider.

Mother's initial case plan consisted of 52 weeks of parenting counseling, anger management counseling, and voluntary drug testing. In a June 25, 2024 meeting with the department, mother acknowledged that she had not started her initial case plan. Mother was informed of the importance of getting enrolled in her initial case plan due to the department's ability to not recommend services. Mother subsequently enrolled in management and parenting counseling on June 26, 2024. She informed the social worker that she started a new job, but she did not disclose whether the position was full time or part time. Mother also requested additional funds to purchase gas for transportation, but the social worker explained that she was only able to provide mother with transportation funds once every 31 days.

On July 15, 2024, the juvenile court found the allegations in the petition true, and the disposition hearing was continued. After multiple continuances, a contested disposition hearing was held on January 29, 2025. Mother was present and testified on her own behalf. After hearing argument, the court determined section 361.5,

3.

subdivision (b)(11) was not applicable due to mother's status as a nonminor dependent at the time her parental rights were terminated for J.G. The court ordered the child removed from mother's custody, and family reunification services were ordered for mother and father.

As part of her case plan, mother was ordered to participate in counseling for parenting, domestic violence, and grief, complete a mental health assessment and follow any recommendations, and submit to random drug testing on a monthly basis. Failure to appear for a drug test would result in a presumptive positive test. An unexcused missed drug test or confirmed positive drug test would require mother to enroll in substance abuse counseling. Supervised visitation was ordered between mother and the child at twice per week for two hours, and a combined six- and 12-month review hearing was set for July 11, 2025.

*Family Reunification Period*

The department's report for the combined six- and 12-month review hearing, dated July 2, 2025, recommended the juvenile court terminate mother and father's family reunification services and set a section 366.26 hearing.[3] Mother attended 33 of 52 weeks for her parenting and child neglect counseling, and she completed 6 of 26 domestic violence classes. Mother's enrollment in domestic violence counseling did not occur until March 6, 2025, and she began mental health counseling in May 2025. A mental health summary report indicated mother was being prescribed medication for depression, anxiety, and trauma. Mother claimed she did not attend many classes in May 2025 due to personal life stressors and an ectopic pregnancy.

---

[3]      Mother attached the review report as an exhibit to her extraordinary writ petition, and the department referenced the exhibit in its response to the petition. The report was not included in the clerk's transcript, however, the juvenile court specifically noted its consideration of the report at the August 4, 2025 hearing. Therefore, on our own motion, we take judicial notice of the July 2, 2025 review report. (Evid. Code, §§ 452, subd. (d), 459.)

Mother missed eight random drug tests, and she provided six negative results. Her one positive drug test result was for marijuana on April 7, 2025. On April 16, 2025, mother refused to drug test after she admitted to sipping from a friend's drink the previous night. Mother failed to enroll in substance abuse counseling after her positive drug test result. Mother's supervised visits with the child were reportedly consistent and without any noted concerns.

There was a domestic violence incident on May 14, 2025, which resulted in mother and father being arrested on active warrants. Law enforcement responded to the parents' vacant residence after being advised that mother fled the residence with potential injuries. Father advised law enforcement that mother started to throw her belongings out of their residence during a verbal argument. Mother fled the residence, but she denied there was any physical violence.

The social worker inquired about the incident on May 21, 2025. Mother explained that father became angry after she threatened to leave the home. However, she insisted their neighbors were the ones fighting. During a later conversation, mother claimed their neighbors were making false reports of domestic violence against them. Mother denied that she fled their residence. She stated that she had just finished taking a shower when law enforcement arrived. Mother did not respond when asked if her relationship with father had ended, but she said they were physically separating for the moment.

A contested six- and 12-month review hearing was held on August 4, 2025. Mother was present and testified on her own behalf. Mother testified that she was currently participating in each of the components of her case plan. Her substance abuse assessment determined that she did not qualify for treatment. Mother also testified that she never refused a drug test, provided a positive drug test result, or missed more than two drug tests.

In her domestic violence counseling, mother learned that her early life revolved around domestic violence. Moving out of the home was identified as a step that she took

5.

to distance herself from domestic violence behavior. Mother testified that she completed 40 of 52 weeks of her parenting and neglect class, and she was in week twelve of her domestic violence class. She learned how to be a "loving, caring parent" from her parenting class. Mother was also participating in mental health counseling, which included a component of grief counseling. Her supervised visitation with the child continued to be consistent. Mother testified that she was overwhelmed with the requirements of her case plan at the outset of the case, but she felt like she was ready for the child to be returned home at the moment.

On cross-examination, mother testified that she last spoke to father on the day that she moved out of their residence on June 11, 2025. However, she also acknowledged that father appeared at a June 25, 2025 supervised visit. Mother initially claimed that father showed up to the visit without her knowledge, but she later confirmed that father had informed her that he was going to bring McDonalds to the visit. Mother also testified that she previously separated from father for one year before resuming the relationship. She was unable to recall any information regarding the domestic violence incident from May 2025, and she did not believe domestic violence was relevant to the contested hearing.

During closing argument, mother's counsel argued that mother had demonstrated sufficient progress to receive continued family reunification services. The department's counsel argued mother failed to show significant progress and an ability to complete her case plan. After hearing argument from all counsel, the juvenile court found that mother's testimony about the knowledge gained from services was "very general." The court also had difficulty with mother's minimization of domestic violence between herself and father.

In discussing her conflicting testimony surrounding her last contact with father, the juvenile court stated, "She just continues to lie about stuff that she knows, if she doesn't lie, she's going to get in trouble for, which is the immaturity part of everything."

The court also determined mother was not forthcoming in her testimony that she never refused a drug test. The court was unable to trust mother "going forward," and it was unable to find there was a substantial probability the child would be returned home by the next review period.

The juvenile court discussed mother's continued association with father through the majority of the reunification period despite his lack of participation in the case plan. It concluded that mother only recently began making progress in her treatment plan by removing herself from her unhealthy relationship with father. The court ultimately found that mother made minimal progress, and it terminated mother's family reunification services. A section 366.26 hearing was set for December 2, 2025.

**DISCUSSION**

### A. Relevant Legal Principles

At the 12-month status review hearing, or permanency review hearing, the juvenile court must order the return of the child to the physical custody of the parent unless it finds the return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (§ 366.21, subd. (f)(1).) If the child cannot be returned home, the court must order termination of reunification services to the parent and commence proceedings to implement a permanent plan for the child. (§ 366.21, subds. (g)(4) & (h).) If the court finds that there is a substantial probability the child may be returned to the parent within 18 months from the time the child was initially removed, or that reasonable services were not provided to the parent, the court extends reunification services for an additional six months rather than proceed to the final stage of dependency proceedings, permanency planning. (§ 366.21, subd. (g)(1).)

A finding of "a substantial probability that the child will be returned to the physical custody of [his or her parent] and safely maintained in the home within the extended period of time," requires the court to find all of the following subfactors:

"(A) That the parent or legal guardian has consistently and regularly contacted and visited with the child[;]

"(B) That the parent or legal guardian has made significant progress resolving problems that led to the child's removal from the home[; and]

"(C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of their treatment and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A)–(C).)

## B.    Standard of Review

We generally review for substantial evidence a juvenile court's factual findings supporting an order terminating reunification services. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) Under this standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Id*. at pp. 688–689.) Where, as here, "the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) Specifically, the question is whether the evidence was "(1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*Ibid*.)

## C.    Analysis

We conclude the evidence did not compel the juvenile court to find a substantial probability of return; specifically, the court's finding that mother's progress was not significant was reasonable and supported by the evidence. Mother's primary contention appears to be that she was continuing her participation in services and visitation. However, the court terminated her services based on the minimal progress that she had made despite continued participation. Mother's failure to acknowledge her positive drug

8.

test in April 2025 and domestic violence incident with father in May 2025 provided an adequate basis for the court to determine mother's progress was inadequate. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

The juvenile court was required to make all of the findings delineated under section 366.21, subdivision (g)(1) in order to justify extending mother's reunification services. The court did not dispute that mother had proven the first prong of regular visitation. However, it was unable to find that mother demonstrated significant progress and an ability to complete the objectives of her treatment and provide for the child's safety. As discussed above, mother was not forthcoming about her recent drug use and contact with father. The incident with father occurred while she was participating in her domestic violence course, and she did not separate from father until the end of the review period.

Accordingly, we cannot say that the evidence on the issue was of such a character and weight to leave no room for the juvenile court to determine that it was insufficient to support a finding of a substantial probability of return by the 18-month review period. We conclude the evidence cited by mother did not compel the court to extend mother's reunification services.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A). The request for a stay of the section 366.26 hearing is denied.

9.