[No. A112494. First Dist., Div. One. Sept. 20, 2006.]

In re DAVEY WAYNE HUDSON on Habeas Corpus.

**4**

COUNSEL

Bill Lockyer, Attorney General, James M. Humes, Frances T. Grunder, Julie Garland, Elizabeth S. Kim and Anya M. Binsacca, Assistant Attorneys General, and Denise A. Yates, Deputy Attorney General, for Appellant California Department of Corrections and Rehabilitation.

David C. Coleman, Public Defender, Ron Boyer, Deputy Public Defender, and Suzanne J. Chapot, Assistant Public Defender, for Respondent Davey Wayne Hudson.

OPINION

SWAGER, J.—Appellant, the California Department of Corrections and Rehabilitation (Department), appeals the order granting Davey Wayne Hudson's habeas corpus petition. The order invalidated a special condition of Hudson's parole that prohibited him from possessing or having access to computers, the Internet, or camera equipment absent permission from the Department of Adult Parole Operations (DAPO). The superior court granted the petition, finding the condition both unreasonable and overbroad.

The Department argues that the petition should not have been heard because Hudson failed to exhaust his administrative remedies. The Department also argues that the disputed parole condition was neither unreasonable nor overbroad. We agree with the superior court that Hudson exhausted his administrative remedies. After reviewing the record, however, we find that the parole condition is reasonable and appropriate under the circumstances of this case. We therefore reverse.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 1998 in Contra Costa County Hudson was convicted by plea of lewd conduct with a child under the age of 14. (Pen. Code, § 288, subd. (a).)[1] The victim was an 11-year-old boy who first met Hudson when Hudson was a coach of the boy's roller hockey team. Hudson was arrested after the boy complained that Hudson had unbuttoned the boy's pants and fondled the boy's genitals on three to six occasions over a span of three to five months. In connection with the arrest, a police officer conducted a search of Hudson's vehicle, and found paperwork that had been downloaded from the Internet a few days earlier. The paperwork included an article concerning false allega-

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

tions of child abuse and a list of instructions on what to do if one is accused of child molestation. Hudson was sentenced to one year in county jail and five years of formal probation. Hudson's probation conditions did not prohibit him from having contact with children.

In May 1999, a probation officer conducting a search of Hudson's residence reported that Hudson quickly logged off a computer when the officer entered. In February of 2001, another probation search of Hudson's residence uncovered a paper publication of "obvious" child pornography, newspaper articles about children and about child molesters being arrested, and various thank you letters that Hudson had received from organizations that serve children. At this time Hudson's computer was seized but the officers were unable to access the computer's hard drive because it was encrypted. Hudson refused to provide the password for his computer to the police. During a probation search in April 2001, the officers seized, among other things, hundreds of photographs of children, a desktop computer with an attached web camera and Internet access, and a laptop computer.

On June 4, 2001, in Santa Clara County, Hudson was convicted of two misdemeanor counts of violating section 647.6, subdivision (a) (annoying or molesting a child under the age of 18). According to the police report, Hudson had taken photographs of two young boys that lived next door and had displayed these photographs on his computer. He had also placed his hands on the boys' shoulders while they played games on the computer. Following this conviction, the probation officer in Contra Costa County recommended that Hudson's probation for the 1998 conviction be revoked. In support of this recommendation, the probation officer stated: "Mr. Hudson's attitude about his behavior, his sophistication with computers and refusal to provide the password for his computer to police, his ongoing contact with potential victims, compounded by his resistance to treatment make Mr. Hudson very dangerous for children in any neighborhood." Hudson's probation was revoked and he was sentenced to six years in state prison.

On March 26, 2005, Hudson filed an administrative appeal form. On the first page of the form, under "Describe Problem," Hudson stated: "The State's imposition of a mandatory 3-year parole term to be served after, not concurrent with, his agreed 6-year prison term and special conditions of that parole violate his plea agreement. These are significant punishments outside of the agreement that severly [*sic*] impact his liberty interests. They are based on inaccurate facts and facts not stipulated nor proven by jury. They are unconstitutionally overbroad, vague, and not related to legitimate government objectives."

On June 8, 2005 (two days after his scheduled release date), Hudson filed a petition for writ of habeas corpus in the superior court. As his first ground for relief, Hudson stated: "Petitioner asserts that numerous special conditions of parole violate numerous constitutional rights such as freedom of association, freedom of the press, freedom of the right to work, the right to privacy, etc." With respect to exhaustion of administrative remedies, Hudson stated: "Petitioner has filed an administrative appeal with Department of Corrections Parole and Community Services Department and has [*sic*] been over 30 days and I have had no response. The paroleing [*sic*] authority, the Board of Prison Terms no longer has an administrative appeals unit under Title 15, Section 2050 and therefore petitioner must make his application to the court."

On August 4, 2005, the superior court issued an order to show cause, directing the Attorney General to show why four of Hudson's special parole conditions did not "unlawfully deprive [Hudson] of his freedom." The Attorney General filed a return, arguing that Hudson had failed to exhaust his administrative remedies. The Attorney General also proposed to modify three of the special conditions, while retaining the condition on computer usage that is disputed here. In his traverse, Hudson stated that he had filed four separate appeals with state, regional, and local parole offices. The authorities did not act on any of the appeals, nor did they send Hudson any followup notice regarding the appeals. According to the Department, the state parole agency properly screened out Hudson's initial appeal because "it did not have the jurisdiction to address the three-year imposition of parole, which must be addressed by the [Board of Prison Terms]."

On November 28, 2005, the superior court issued an order granting relief without an evidentiary hearing. The court found that Hudson had exhausted his administrative remedies because "the [DAPO] had the appeal of [Hudson] and indicated that it had no intention of acting upon it." The court then struck the parole condition restricting Hudson's computer usage as "unreasonable and overbroad," citing *In re Stevens* (2004) 119 Cal.App.4th 1228, 1233–1234 [15 Cal.Rptr.3d 168] (*Stevens*). This appeal followed.

## STANDARD OF REVIEW

Because the superior court based its decision solely on documentary evidence without holding an evidentiary hearing, we independently review the record to determine whether the writ was properly granted. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 677 [128 Cal.Rptr.2d 104, 59 P.3d 174]; *In re DeLuna* (2005) 126 Cal.App.4th 585, 591 [24 Cal.Rptr.3d 643].)

## DISCUSSION

### I.  *Exhaustion of Administrative Remedies*

The Department argues that Hudson did not exhaust his administrative remedies, asserting "there is no recognized exception to exhaustion based on the administrative agency's refusal to act on the appeal." The Department's position is that Hudson's appeal was "properly screened out" because DAPO did not have the jurisdiction to address the imposition of parole. Hudson asserts that he is not relying on any exception to the exhaustion requirement. Rather, he asserts that he has exhausted his administrative remedies because he has "taken his appeal as far as the regulations allowed under the circumstances."

██ It is well settled that inmates must exhaust available administrative remedies before filing a petition for habeas corpus in the courts. (*In re Muszalski* (1975) 52 Cal.App.3d 500, 508 [125 Cal.Rptr. 286].) "The exhaustion of administrative remedies requirement furthers several important societal and governmental interests. These include bolstering administrative autonomy, mitigating damages, giving agencies opportunity to make factual findings, encouraging settlement, filtering out frivolous claims, fostering better prepared litigation, and promoting judicial economy. [Citations.] In addition, the requirement ensures 'the use of administrative agency expertise and capability to order and monitor corrective measures . . . .' [Citation.]" (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 666 [19 Cal.Rptr.3d 92].)

██ It is also true, however, that "the doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. [Citation.] It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction [citation], when pursuit of an administrative remedy would result in irreparable harm [citations], when the administrative agency cannot grant an adequate remedy [citations], and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be." (*Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].)

██ The regulations of the Department of Corrections provide for a multilevel review process.[2] An inmate contesting a condition of parole must

---

[2] California Code of Regulations, title 15, section 3084.7, subdivision (g), sets forth the review process regarding conditions of parole:

"An inmate dissatisfied with conditions of parole imposed by departmental staff may submit an appeal requesting removal or change of the conditions.

file an appeal with a regional appeals coordinator within 15 working days following receipt of the decision outlining conditions of parole. (Cal. Code Regs., tit. 15, § 3084.7, subd. (g)(1).) Both the informal and the first level of review are waived, and the appeals coordinator is required to forward the appeal to the regional parole administrator for second level review. The second level review must be completed within 30 working days. (Cal. Code Regs., tit. 15, § 3084.6, subd. (b)(3).)[3] Thereafter, an inmate or parolee must submit an appeal to the third level review within 15 working days "of receiving an unacceptable lower level appeal decision." (Cal. Code Regs., tit. 15, § 3084.6, subd. (c).) The regulations do not specify how the third level of review is reached in the event that the second level of review is never undertaken.

We conclude that Hudson has exhausted his administrative remedies. DAPO did not undertake the second level review process and the applicable regulations do not specify what procedures a parolee is to follow in the event of DAPO inaction. Admittedly, Hudson's initial administrative appeal did not focus precisely on the disputed parole conditions. Nevertheless, Hudson did contest the imposition of the special conditions within his appeal and there is nothing in the record indicating that DAPO provided Hudson with any type of followup response.[4] Accordingly, we agree with the trial court that Hudson exhausted his administrative remedies and we now proceed to the merits of the appeal.

---

"(1) Within 15 working days following receipt of the decision outlining conditions of parole, the appellant shall submit the appeal form directly to the appeals coordinator of the parole region where the case is assigned.

"(2) The informal and first level reviews shall be waived. The appeals coordinator shall forward the appeal to the regional parole administrator for second level review.

"(3) An appellant dissatisfied with second level review decision, may file the appeal at third level.

"(4) An appellant dissatisfied with a third level review decision may submit the appeal to the Board of Prison Terms pursuant to 15 CCR sections 2525 and 2526."

[3] California Code of Regulations, title 15, section 3084.6, subdivision (b)(3) provides: "Second level responses shall be completed within . . . 30 working days if first level is waived . . . ."

[4] We disagree with the Attorney General's contention that Hudson's traverse improperly introduced new facts supporting his argument for exhaustion of administrative remedies. "[T]he traverse may allege additional facts in support of the claim on which an order to show cause has issued . . . ." (*In re Clark* (1993) 5 Cal.4th 750, 781, fn. 16 [21 Cal.Rptr.2d 509, 855 P.2d 729]; see also *In re Connor* (1940) 16 Cal.2d 701, 711 [108 P.2d 10].) The facts in Hudson's traverse simply add further support to his claim that no action was taken on his administrative appeal.

## II. *Parole Condition Restricting Access to Computers and the Internet*

■ We first observe that "[i]n California, parolee status carries distinct disadvantages when compared to the situation of the law-abiding citizen. Even when released from actual confinement, a parolee is still constructively a prisoner subject to correctional authorities. [Citations.] The United States Supreme Court has characterized parole as 'an established variation on imprisonment' and a parolee as possessing 'not . . . the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on observance of special parole restrictions.' [Citations.] Our own Supreme Court holds a like opinion: 'Although a parolee is no longer confined in prison his custody status is one which requires . . . restrictions which may not be imposed on members of the public generally.' [Citations.]" (*People v. Lewis* (1999) 74 Cal.App.4th 662, 669–670 [88 Cal.Rptr.2d 231].) These principles governing the status of a parolee were again recently approved by the United States Supreme Court in *Samson v. California* (2006) 547 U.S. ___ [165 L.Ed.2d 250, 258, 126 S.Ct. 2193, 2198].

■ The fundamental goals of parole are " 'to help individuals reintegrate into society as constructive individuals' [citation], ' "to end criminal careers through the rehabilitation of those convicted of crime" ' [citation] and to [help them] become self-supporting." (*Stevens, supra,* 119 Cal.App.4th 1228, 1233.) In furtherance of these goals, "[t]he state may impose any condition reasonably related to parole supervision." (*Ibid.*) These conditions "must be reasonably related to the compelling state interest of fostering a law-abiding lifestyle in the parolee." (*Id.* at p. 1234.)

■ "A condition of [parole] will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.] Conversely, a condition of [parole] which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], fn. omitted.)[5]

In urging that we affirm the superior court's order, Hudson relies primarily on *Stevens,* which is the leading California case on conditions of parole that restrict computer access by persons convicted of child molestation offenses.

---

[5] The *Lent* case concerned conditions of probation. As the court in *Stevens* noted, "[t]he criteria for assessing the constitutionality of conditions of probation also applies to conditions of parole." (*Stevens, supra,* 119 Cal.App.4th 1228, 1233.)

Like Hudson, the defendant in *Stevens* was convicted of violating section 288, subdivision (a). (*Stevens, supra,* 119 Cal.App.4th 1228, 1231.) His computer was seized after his initial arrest. The computer was searched and the authorities determined that it had not been "used to download child pornography, to contact the victim, or to commit a crime." (*Ibid.*) When he was released on parole, the Board of Prison Terms imposed the following condition: " 'You shall not possess or have access to computer hardware or software including the internet [*sic*].' " (*Ibid.*) The defendant filed a petition for habeas corpus with the superior court, arguing that the condition infringed on his right to obtain gainful employment. (*Ibid.*) The superior court denied the petition and he sought relief from the court of appeal. (*Id.* at p. 1232.)

The appellate court acknowledged that the parole authority "was legitimately concerned that a released child molester's unfettered access to a computer might result in criminal conduct." (*Stevens, supra,* 119 Cal.App.4th 1228, 1239.) The court concluded, however, that the complete prohibition on use of computers and the Internet "bore no relation to [defendant's] conviction for child molestation and imposed a greater restriction of his rights than was reasonably necessary to accomplish the state's legitimate goal." (*Ibid.*)

In *People v. Harrisson* (2005) 134 Cal.App.4th 637, 646 [36 Cal.Rptr.3d 264] (*Harrisson*), the Third District distinguished *Stevens* on its facts. In *Harrisson*, the defendant had been convicted of possession of child pornography. He challenged a probation condition that forbade him from accessing the Internet, relying on *Stevens*. The court distinguished *Stevens* because the defendant had previously violated a ban on accessing the Internet and had viewed pornography on his computer. (*Id.* at p. 647.) Additionally, the defendant had recently expressed a desire to seek revenge against the prosecutor. The court found that "[g]iven the facts specific to this case, we find the prohibition against Internet usage reasonably related to defendant's offense and necessary to the important dual goals of deterrence and protection of the public." (*Ibid.*)

Like the court in *Harrisson*, we find that the circumstances of this case distinguish it from *Stevens*. We are particularly troubled by the fact that Hudson deliberately encrypted his computer and withheld his password from authorities while he was on probation for his first offense. While Hudson points out that, like the defendant in *Stevens*, his first offense did not involve a computer, this case is distinguishable in that the authorities in *Stevens* were able search his computer and verify that he had not used it to further his

criminal conduct.[6] Because Hudson deliberately prevented the authorities from searching his computer while he was on probation, similar verification was not available to the authorities in this case.[7] Accordingly, we find the special condition is related to Hudson's offense and is reasonably related to deterring future criminality.

Additionally, unlike the condition that was at issue in *Stevens*, the special condition here is not a blanket prohibition. Hudson will be allowed to use a computer and access the Internet if he first obtains permission from DAPO. Hudson argues that the requirement that he obtain permission from his parole officer is akin to a total ban, and therefore represents a "distinction . . . without a difference." Hudson asserts that his right to use a computer is jeopardized by the parole officer's "unfettered and effectively unreviewable discretion to ban use." Yet many of the conditions of Hudson's parole are subject to the DAPO's permission, including his employment, where he may live, and when he may travel more than 25 miles from his residence. Parole officers must exercise a certain amount of discretion and we will not assume that DAPO will unreasonably withhold permission for legitimate computer and Internet usage.

Finally, we note that other courts have upheld similarly worded conditions: "We are persuaded that limiting [defendant]'s Internet access without prior approval of the Probation Office is reasonably related to the offense [of transmission of child pornography], and to the important goal of deterring him during the period of supervision from reverting to similar conduct, and thus, to rehabilitation and protecting the public. The condition does not plainly involve a greater deprivation of liberty than is reasonably necessary for the purpose because it is not absolute; rather, it allows for approval of appropriate online access by the Probation Office." (*United States v. Rearden* (9th Cir. 2003) 349 F.3d 608, 621; see also *United States v. Zinn* (11th Cir. 2003) 321 F.3d 1084, 1093.)

---

[6] As noted above, Hudson's second offense did involve some computer usage. He had taken photographs of two young boys, displaying the images on his computer. He had also placed his hands on the boys' shoulders while they played games on the computer.

[7] We find Hudson's argument that "the State may properly make a condition of parole that Petitioner permit monitoring of his computer for compliance" to be somewhat disingenuous.

## DISPOSITION

The order of the trial court is reversed. We remand the case to the superior court with directions to deny the petition.

Marchiano, P. J., and Margulies, J., concurred.

The petition of respondent Davey Wayne Hudson for review by the Supreme Court was denied January 3, 2007, S147602. Corrigan, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.