Filed 9/15/16  Fricks v. Superior Court CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARQUE D. FRICKS, | B265309 |
| Petitioner, | |
| v. | (Los Angeles County Super. Ct. No. BH010027) |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Real Party in Interest. | |

Petition for writ of habeas corpus challenging an order of the Superior Court of Los Angeles County, William C. Ryan, Judge, treated as petition for writ of mandate. Petition granted.

Rich Pfeiffer, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Julie A. Malone, and Charles Chung, Deputy Attorneys General, for Real Party in Interest.

By petition for writ of habeas corpus (which we deem a petition for writ of mandate), Marque Fricks asks this court to order the superior court to consider on the merits Fricks's March 4, 2015 petition for writ of mandate seeking the return of personal property seized by the California Department of Corrections and Rehabilitation (CDCR). We conclude that Fricks exhausted his administrative remedies, and thus we direct the trial court to consider Fricks's writ petition on the merits.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Fricks's Lost Property Claim.*

Fricks, while an inmate at Calipatria State Prison,[1] filed a lost property claim in December 2013, seeking the return of property he alleged was confiscated during a November 7, 2013 search of his prison cell. Fricks alleged that prison officials removed all of his personal property during the cell search, stored it in another location, and then purported to return it to him. However, he asserted that most of the returned property actually belonged to other prisoners and that much of his own property was never returned. In particular, Fricks complained that he had been deprived of a jacket he needed because of the cold weather, as well as some irreplaceable family photographs.

Between December 2013 and December 2014, Fricks pursued his lost property claim through the CDCR administrative appeals process as set forth in Title 15 of the California Code of Regulations. He filed two inmate appeals with prison authorities, the last of which was cancelled in December 2014. From the documents submitted by the parties, we glean the following history of Fricks's inmate appeals.

a. *Fricks's November 17, 2013 Request (Form 22).*

On about November 17, 2013, Fricks submitted a Form 22 "Parolee Request for Interview, Item, or Service" explaining that when he was returned to his cell after the November 7 search, "all my personal property was gone. . . . I'm missing all my personal

---

[1] Fricks has informed us that he has been transferred to Los Angeles Palma Correctional Center in Eloy, Arizona.

2

clothing, [hygiene,] food, fan, battery charger, etc. I would highly appreciate your assistance."

The CDCR responded by letter dated November 20, 2013. The letter acknowledged the November 7 search of Fricks's cell by the Investigative Services Unit and said, among other things: "During the course of the inquiry, it was concluded that you were not involved in possession of the contraband items discovered in your cell and released back to Facility 'B'. As a result, your Inmate/Parolee Request for Interview, Item or Service (CDCR 22) needs to [be] addressed to your Housing Unit Officers who were responsible at the time to inventory your personal property."

b. *Fricks's November 26, 2013 Request (Form 22).*

Fricks submitted another "Parolee Request for Interview, Item, or Service" on about November 26, 2013. The form, which appears to have been hand-delivered to Correctional Officer Rodriguez, said: "It's been 2 1/2 weeks and I'm still missing at least 85% of my property."

Correctional Officer Rodriguez responded on November 28, 2013: "I did not inventory your property, but I did look into the cell after ISU Officers searched Cell 113 and I saw a lot of property . . . in a pile on the ground. After your property was inventoried Officer Moses and I took all the property from Cell 113 to R & R for storage. You need to contact c/o Grant, R & R."

Fricks responded on December 9, 2013: "It's been a month since my cell was searched and my property was taken. I've been respectful [and] as patient as possible, trying to collect my property and I've still received nothing. So I'm going through the chain of command in hopes of getting close to getting my property back. I would highly appreciate your assistance."

c. *Fricks's First Appeal (Form 602) (December 2013).*

(1) *First level review.*

Fricks submitted an "Inmate/Parolee Appeal" (Form 602) on about December 11, 2013. Fricks explained that he and his cellmate had been removed from their cell while it was searched on November 7, 2013; he returned to his cell to find all his personal

3

property missing; and a correctional officer informed him the missing property had been taken to storage and would be returned to him. However, the items returned belonged almost exclusively to his cell-mate and two other prisoners: "Besides my T.V., a few books, paperwork, and my shoes, everything else was . . . taken back to R & R for storage. I've yet to receive the rest of my property. It's been over a month and I've submitted paperwork to the officers that were involved with my property. I've also went [*sic*] through the chain of command (Sgt. Moore . . . C/O Rodriguez, Sgt. Marquez, Lt. Martinez & Capt. Moore) addressing my issues [and] concerns but no actions have been taken." Fricks asked that his appeal "be accepted as a[n] emergency 602" because (1) "[d]ue to the (cold) weather change I'm unable to put on the proper clothing to prevent from getting sick. I don't even have a state issued jacket," and (2) "[b]ecause of the irreplaceable pictures that I'm still missing of my daughter, my two brothers['] funeral and my family."

The CDCR's response, dated December 18, 2013, stated that Fricks's appeal had been rejected under California Code of Regulations, title 15, section 3084.6, subdivision (b)(7)[2] because it was missing supporting documents required by section 3084.3. It also stated: "Your appeal is missing . . . : [¶] PROPERTY INVENTORY SLIP [¶] RECEIPTS [¶] CELL SEARCH SLIP [¶] ALSO, WHAT PROPERTY IS MISSING? WHAT IS EVERYTHING ELSE? BE SPECIFIC."

Fricks's handwritten response, dated January 5, 2014, stated that Fricks was enclosing his "property inventory slip [and] all receipts for all the property I'm missing (list of items missing enclosed as well). No cell search slip was provided, but here are the 1083's [inmate property inventories] for the missing property in question."

The CDCR rejected Fricks's appeal for the second time on February 28, 2014. The notice of rejection stated: "Your appeal has been rejected pursuant to California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(9). Your appeal issue is

---

**2** All further regulatory citations are to Title 15 of the California Code of Regulations, unless otherwise indicated.

obscured by pointless verbiage or voluminous unrelated documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal. [¶] CLARIFY REQUEST. IT APPEARS THAT YOUR REQUEST IS TO ACCEPT THIS APPEAL AS AN EMERGENCY DUE TO WEATHER CHANGE (NECESSITY OF A JACKET) AND THE IRREPLACABLE PICTURES. ARE YOU REQUESTING PROPERTY? IF SO, YOU NEED TO INDICATE THIS WITHIN YOUR REQUEST IN SECTION B OF 602. BE SPECIFIC."

Fricks's response, dated March 4, 2014, says: "It's obvious after almost four months without my property what I was requesting. . . . Why almost two months to tell me my 602 has been rejected? This doesn't make sense, at all."

The CDCR rejected[3] Fricks's appeal for a third time on March 27, 2014. The notice of rejection advised Fricks that "YOU DID NOT FINISH THE FORM 22 PROCESS. YOU WERE INSTRUCTED BY C/O G. RODRIGUEZ TO SEND YOUR FORM 22 TO R & R C/O GRANT. YOU NEED TO DO THAT TO SEE IF THIS CAN BE RESOLVED BEFORE SENDING APPEAL TO THIS OFFICE."

Fricks's response, dated April 2, 2014, stated: "There was no need to forward a form 22 to c/o Grant because I spoke with him personally. If you would read all documents that I've submitted, you would see a 1083 form[4] dated 12/12/13 provided and signed by c/o Grant. I've submitted all necessary documents to further process this appeal. [¶] Please read all submitted documents before forwarding anything back to me."

---

[3] Although neither this notice, nor the subsequent one issued on April 22, 2014, used the word "rejected" they appear to have been rejections because they informed Fricks that his appeal documents were being returned to him because of a procedural deficiency.

[4] The CDCR Form 1083 is an Inmate Property Inventory Form. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 502 (*Escamilla*).)

The CDCR rejected Fricks's appeal for the fourth time on April 22, 2014. The notice of rejection stated: "AS PREVIOUSLY INSTRUCTED ON 2/28/14; CLARIFY REQUEST. IT APPEARS THAT YOUR REQUEST IS TO ACCEPT THIS APPEAL AS AN EMERGENCY DUE TO WEATHER CHANGE (NECESSITY OF A JACKET) AND THE IRREPLACABLE PICTURES. ARE YOU REQUESTING PROPERTY? IF SO, YOU NEED TO INDICATE THIS WITHIN YOUR REQUEST IN SECTION B OF 602. BE SPECIFIC."

Fricks's response, dated May 6, 2014, stated: "On 12-18-13 you asked me to provide you with a property inventory slip, receipts and a cell search slip, which I did. So it's clear that I'm requesting my property. I've enclosed a list of property I'm missing which is no longer with my 602 so I'm enclosing another one."

Fricks's appeal was "cancelled" at the "first level" on July 15, 2014. The notice of cancellation began by restating the essence of Fricks's appeal, i.e., that following a cell search all his property was missing and that, although some property was returned, none of it except for a few items belonged to Fricks. This summary of Fricks's claim was then followed by these paragraphs:

"APPEAL RESPONSE: [¶] An investigation of your appeal was conducted, which included your appeal with attachments . . . . On June 19, 2014 you refused to participate in a telephonic interview with Sergeant B. Legier . . . . Sergeant T. Case was the witness to your refusal.

"FINDINGS: [¶] As a result of your refusal to participate pursuant to Title 15, CCR section 3084.6(a)(c)(8) which says in part: An appeal may be cancelled for any of the following reasons, which include, but are not limited to: The appellant refuses to be interviewed or to cooperate with the reviewer.

"APPEAL DECISION: [¶] Based on this review, your appeal is CANCELLED at the FIRST Level of Review."

(2) *Second level review.*

On about July 22, 2014, Fricks received a notice that his appeal had been rejected at the "second level" because, "The appeal is incomplete. Your appeal is being returned

6

for the following reason(s):  [¶]  IF YOU ARE UNSATISFIED WITH THE FIRST LEVEL DECISION, THEN YOU NEED TO FILL OUT SECTION D OF THE 602 AND RETURN IT.”  The notice also stated that, “If you are required to respond/explain to this CDC Form 695, use *only* the lines provided below.”  (Italics added.)

Fricks submitted a response, dated August 18, 2014, on the “lines provided below” on CDC Form 695, as follows:  “Never once did I refuse a interview.  Back in February 2014[,] I was interviewed by Sgt. Olmos who partially granted my 602 at the first level.”

Fricks apparently did not receive a response to this submission.

(3) *Third level review*

Sometime after August 18, 2014, Fricks sent a letter to the Office of Appeals in Sacramento, addressed “To:  Whom It May Concern.”  It stated that Fricks was writing “because my 602 was cancelled . . . .  All supporting documents was [*sic*] and are attached along with this 602.  I was told that my 602 is cancelled out because I supposedly refused an over the phone interview which was false . . . .”

Fricks received a response from the Office of Appeals in Sacramento, dated September 30, 2014, stating:  “The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review . . . .  The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.  [¶]  It has been determined that you are attempting to submit an appeal that has been previously cancelled.  Pursuant to CCR 3084.4 you are advised that this is considered misuse or abuse of the appeals process.  Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).”

d. *Fricks’s Second Appeal (Form 602) (December 2014).*

On December 1, 2014, Fricks submitted a new Form 602.  He characterized the subject of his appeal as:  “(Personal Property)  Appealing canceled 602.”  He stated:  “I filed a 602 back in December 2013 concerning the lost [*sic*] of my personal property.  After several requests for interviews my 602 was heard in February 2014 by Sgt. Olmos on B-yard, which he granted in part at the first level. . . .  [I]n June 2014[,] I received my

7

602 along with a first level response stating that my 602 was being canceled due to I refused to participate in a telephonic interview with Sgt. B. Legier and Sgt. T. Case was the witness to me refusing. I've never been called to participate in a telephone interview and Sgt. T. Case [has] never spoken to me concerning a telephone interview or that he suppose to had [*sic*] witness me refusing the telephone interview." Fricks requested that "my 602 . . . be heard in its entirety without ignoring the facts that are present."

On about December 4, 2014, Fricks received notice that his second appeal had been cancelled because "[t]ime limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints. [¶] YOU STATE THAT IN 6/2014 YOU WERE INFORMED THE 602 WAS BEING CANCELLED DUE TO YOU REFUSING TO PARTICIPATE IN A PHONE INTERVIEW. YOU DID NOT SUBMIT YOUR APPEAL UNTIL 12/1/14 BEYOND THE 30 DAY TIME FRAME."

2. *Petition for Writ of Mandate*.

Fricks filed a pro se petition for writ of mandate in the superior court on March 4, 2015, seeking the return of his property. On June 24, 2015, the superior court issued a Memorandum of Decision denying Fricks's petition for failure to exhaust administrative remedies: "The Court finds that the Respondent CDCR has complied with its ministerial duty to process Petitioner's appeal. Because Petitioner has not exhausted his administrative remedies the Court cannot rule on his underlying claim regarding his property . . . . Exhaustion of remedies only occurs when it gets to third level review, and contrary to Petitioner's argument, a cancellation or a rejection decision does not exhaust administrative remedies. (Cal. Code Regs., tit. 15, section 3084.1(b).)"

3. *The Present Petition.*

On July 10, 2015, Fricks filed a pro se petition for writ of habeas corpus in this court. Fricks urged that the superior court "abuse[d] [its] discretion and erroneously denied petitioner[']s [petition for] writ of habeas corpus . . . . The court found that respondent CDCR had complied with its ministerial duty to process petitioner's appeal [and] as such, petitioner failed to exhaust his administrative remedies. Petitioner asserts

8

the court is in error and relief is warranted in this case and the matter must be remanded for further proceedings."

After soliciting an informal response from the Attorney General, this court granted Fricks's habeas corpus petition on January 7, 2016, and ordered the superior court to consider Fricks's petition for writ of mandate on the merits.

On January 22, 2016, the Attorney General filed a petition for rehearing. (See *People v. Romero* (1994) 8 Cal.4th 728, 734.) On January 28, 2016, we granted the rehearing petition, vacated our previous order, and issued an order to show cause. We ordered the Attorney General to file a response to Fricks's habeas corpus petition and ordered the appointment of counsel to represent Fricks.

## DISCUSSION

Fricks contends that the trial court erred in concluding that he did not exhaust his administrative remedies. Because the trial court based its decision solely on documentary evidence without holding an evidentiary hearing, we independently review the record to determine whether the writ was properly denied for failure to exhaust administrative remedies. (*In re Hudson* (2006) 143 Cal.App.4th 1, 6; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 677.)

For the reasons that follow, we conclude that Fricks exhausted his available administrative remedies. We therefore send the matter back to the trial court for a consideration of the merits of Fricks's lost property claim.

1. *Exhaustion of Administrative Remedies and Standard of Review.*

"The 'rule of exhaustion of administrative remedies is well established in California jurisprudence.' (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 (*Campbell*).) Generally, it means a party must exhaust administrative remedies before resorting to the courts. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) More specifically, ' "[t]he doctrine of exhaustion of administrative remedies requires that where a remedy before an administrative agency is provided by statute, regulation, or ordinance, relief must be sought by exhausting this remedy before

9

the courts will act." [Citation.]' (*Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 99-100.)" (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1379.) "The requirement that administrative remedies be exhausted 'applies to grievances lodged by prisoners.' [Citations.]" (*In re Dexter* (1979) 25 Cal.3d 921, 925.)

2. *California's Inmate Appeal Process.*

California's grievance system for prisoners seeking to challenge their conditions of confinement is described in Article 8 of the California Code of Regulations. (See Cal. Code Regs., tit. 15, §§ 3084–3086.) Because those regulations are central to our analysis, we discuss them in some detail.

Section 3084.1 states that any inmate or parolee under the CDCR's jurisdiction may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." (*Id.*, subd. (a).) The appeal process "is intended to provide a remedy for inmates and parolees with identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees." (§ 3084.1.)

Section 3084.2 provides that an inmate "shall use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." First and second level appeals "shall be submitted to the appeals coordinator at the institution or parole region for processing." (*Id.*, subd. (c).) All appeals "shall be initially submitted and screened at the first level unless the first level is exempted." (§ 3084.7, subd. (a).) The second level "is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level, or for which the first level is otherwise waived by these regulations. The second level shall be completed prior to the appellant filing at the third level as described in subsection 3084.7(c)." (*Id.*, subd. (b).) If the inmate is dissatisfied with the second level response, he or she "may submit the appeal for a third level review, as described in section 3084.7, provided that the time limits pursuant to section 3084.8 are met." (§ 3084.2, subd. (d).)

Under section 3084.6, subdivision (b), appeals may be *rejected* for a variety of reasons, including failing to allege specific facts (*id.*, subd. (b)(6)), "missing necessary supporting documents" (*id.*, subd. (b)(7)), and "[t]he appeal issue is obscured by pointless verbiage . . . such that the reviewer cannot be reasonably expected to identify the issue under appeal" (*id.*, subd. (b)(9)). Under section 3084.6, subdivision (c), appeals may also be *cancelled* for a variety of reasons, including if the inmate "continues to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal including failure to submit necessary supporting documents" (*id.*, subd. (c)(3)), "refuses to be interviewed or to cooperate with the reviewer" (*id.*, subd. (c)(8)), or fails "to correct and return a rejected appeal within 30 calendar days of the rejection" (*id.*, subd. (c)(10)).

An appeals coordinator or delegated staff member "shall screen all appeals prior to acceptance and assignment for review." (§ 3084.5, subd. (b).) "When an appeal is not accepted, the inmate or parolee shall be notified of the specific reason(s) for the rejection or cancellation of the appeal and of the correction(s) needed for the rejected appeal to be accepted." (*Id.*, subd. (b)(3).) Further, "[u]nless the appeal is cancelled, the appeals coordinator shall provide clear and sufficient instructions regarding further actions the inmate or parolee must take to qualify the appeal for processing." (§ 3084.6, subd. (a)(1).)

Once cancelled, "an appeal shall not be accepted" (3084.6, subd. (e)), except pursuant to subsection 3084.6, subdivision (a)(3), which provides: "At the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review." However, "the application of the rules provided in subsection 3084.6(c) to the cancelled appeal may be separately appealed." (*Id.*, subd. (e).)

11

Unless otherwise stated, "all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. . . . In addition, a cancellation or rejection decision does not exhaust administrative remedies." (§ 3084.1, subd. (b).)

3. *Fricks Exhausted His Administrative Remedies*.

The Attorney General urges, and the trial court agreed, that Fricks failed to exhaust his administrative remedies because he did not complete the second or third level review process. Specifically, the Attorney General asserts: "The second-level appeal was rejected and returned to Fricks on July 22, 2014 because he failed to complete the appropriate portion of the appeals form as section 3084.6, subdivision (b)(13) of the California Code of Regulations requires.[5] Fricks did not correct this deficiency. Instead, as Fricks states in his petition, he wrote a letter to the Office of Appeals in Sacramento, California. By declining to resubmit this appeal, Fricks attempted to bypass the proper appeals procedures and respondent has no ministerial duty to process an appeal under such circumstances."

We do not agree with the Attorney General that Fricks failed to complete the second level review process. As the Attorney General notes, the CDCR's July 22, 2014 notice to Fricks stated that his appeal was being rejected because it was "incomplete." However, the rejection notice did not clearly advise Fricks in what way his appeal was incomplete or what he was required to do to correct the omission. Instead, the notice directed Fricks *both* that (1) "If you are unsatisfied with the first level decision, then you need to fill out section D of the 602 and return it," *and* (2) "If you are required to respond/explain to this CDC Form 695, use *only* the lines provided below." (Italics added.) Faced with these contradictory instructions, Fricks used "the lines provided below" to assert that he had never refused to be interviewed, and then resubmitted the notice to the CDCR on or about August 18, 2014.

---

[5] Section 3084.6, subdivision (b)(13) provides that an appeal may be rejected if it "is incomplete; for example, the inmate or parolee has not provided a signature and/or date on the appeal forms in the designated signature/date blocks provided."

12

The Attorney General urges that Fricks's August 18, 2014 submission was inadequate because Fricks "did not comply" with the instructions to fill out section D of Form 602, thus "abandoning" his appeal. But as we have said, the form rejecting Fricks's appeal did not unambiguously direct him to fill out section D of Form 602. Rather, it directed him *both* to fill out section D *and* to "use only the lines provided below." Since it was impossible for him to follow both instructions—that is, he could not use "*only* the lines provided below" *and* fill out and return section D of Form 602—Fricks used the lines provided to explain that he had never refused to be interviewed. In doing so, Fricks corrected "the reason noted for the rejection," and thus he did what he was required to do by section 3084.6, subdivision (a)(2).[6]

The Attorney General contends that even if Fricks submitted a second level appeal, he nonetheless did not exhaust his administrative remedies because his appeal did not proceed to a third level review. Again, we do not agree. While the regulations unquestionably provide for a three-level review process, they provide no guidance as to how the third level review is to be reached if the CDCR does not respond to a prisoner's second level appeal. That is, the regulations detail what a prisoner must do when his appeal is "rejected" or "cancelled" (§ 3084.6)—but they make no provision for a situation like that present here, where the CDCR fails *either* to reject or cancel a second level appeal.

The Court of Appeal addressed a similar situation in *In re Hudson*, *supra*, 143 Cal.App.4th 1, where a prisoner filed an administrative appeal challenging a special condition of his parole. When he received no response from the Department of Adult Parole Operations (DAPO), he filed a petition for writ of habeas corpus, which the superior court granted. (*Id*. at p. 6.) The CDCR appealed, urging that the petition should

---

[6]    Section 3084.6, subdivision (a)(2) provides:  "An appeal that is rejected pursuant to subsection 3084.6(b) may later be accepted if the reason noted for the rejection is corrected and the appeal is returned by the inmate or parolee to the appeals coordinator within 30 calendar days of rejection."

not have been heard on the merits because the petitioner failed to exhaust his administrative remedies.  (*Id*. at p. 4.)

The Court of Appeal concluded that the trial court had properly considered the petition on the merits.  While acknowledging that inmates must exhaust available administrative remedies before filing a petition in the superior court, the court noted that " 'the doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma.  [Citation.]  It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction [citation], when pursuit of an administrative remedy would result in irreparable harm [citations], when the administrative agency cannot grant an adequate remedy [citations], and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be.'  (*Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834.)"  (*In re Hudson*, *supra*, 143 Cal.App.4th at p. 7.)

As relevant to the appeal before it, the *Hudson* court agreed that the regulations required an inmate or parolee to submit an appeal to the third level review before seeking relief from the court, but noted that the regulations "do not specify how the third level of review is reached in the event that the second level of review is never undertaken [by the agency]."  (*In re Hudson*, *supra*, 143 Cal.App.4th at p. 8.)  It therefore concluded that Hudson had exhausted his administrative remedies:  "DAPO did not undertake the second level review process and the applicable regulations do not specify what procedures a parolee is to follow in the event of DAPO inaction.  Admittedly, Hudson's initial administrative appeal did not focus precisely on the disputed parole conditions.  Nevertheless, Hudson did contest the imposition of the special conditions within his appeal and there is nothing in the record indicating that DAPO provided Hudson with any type of followup response.  [Footnote omitted.]  Accordingly, we agree with the trial

14

court that Hudson exhausted his administrative remedies and we now proceed to the merits of the appeal."[7] (*Ibid*.)

The present case is analogous to *In re Hudson*. Like the petitioner in *Hudson*, Fricks submitted a response to a rejection of his appeal at the second level, to which the CDCR did not reply. The applicable regulations do not provide any procedures to be followed in the event of CDCR inaction, and thus Fricks had no avenue for proceeding to a third level review. Accordingly, in view of the CDCR's inaction at the second level— i.e., its failure to either "accept," "reject," or "cancel" Fricks's second level appeal—we conclude that Fricks exhausted his available administrative remedies, and his petition should have been heard on the merits.

We add a final note concerning Fricks's letter to the appeals office in Sacramento. The Attorney General asserts that Fricks submitted this letter *instead of* submitting a proper second level review, thus improperly attempting to circumvent the appeals process. As our earlier discussion implies, Fricks's letter to the appeals office was *in addition to*, not instead of, a resubmission at the second level of review. Thus, while Fricks's letter to the appeals office may have been superfluous, it was not disqualifying.

4. *Fricks Is Entitled to the Issuance of a Writ of Mandate*.

Fricks captioned his petition in this court a petition for writ of habeas corpus, but the relief Fricks seeks is more properly available by petition for writ of mandate. However, "[t]he label given a petition, action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading." (*Escamilla*, *supra*, 141 Cal.App.4th at p. 511.) Thus, when a petition for writ of habeas corpus alleges facts that would support its consideration as a petition for writ of mandate, a court is "not precluded on appeal from considering that pleading to be a petition for writ of mandamus." (*Ibid*.)

---

[7] On the merits, the court concluded that the special conditions of probation were reasonable and appropriate, and thus it reversed the trial court's order granting the writ of habeas corpus. (*In re Hudson*, *supra*, 143 Cal.App.4th at p. 11.)

In the present case, Fricks has alleged facts in this petition for writ of habeas corpus that support its consideration as a petition for writ of mandate. We thus exercise our discretion to treat it as such. (See *Escamilla*, *supra*, 141 Cal.App.4th at p. 511 ["B]ecause the question of whether [the petition for writ of habeas corpus] can or should be considered to be a petition for writ of mandamus is 'an issue of law not turning on disputed facts' and involves an important question of public policy, we exercise our discretion to consider and decide that question even though [petitioner] did not raise it below."].)

### DISPOSITION

The petition for writ of habeas corpus, which we deem a petition for writ of mandate, is granted. The matter is transferred to the superior court, which is directed to consider the merits of Fricks's petition seeking return of property. The superior court shall appoint Fricks's current appellate counsel, Rich Pfeiffer, to represent Fricks on remand.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.

HOGUE, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16