Filed 5/13/22  In re I.O. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re I.O., a Person Coming Under the Juvenile Court Law. | B312673 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LAZARO O.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 17CCJP02464F) |

APPEAL from orders of the Superior Court of Los Angeles County.  Annabelle G. Cortez, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie,  Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Lazaro O., the father (Father) of I.O., appeals from the juvenile court's jurisdictional findings and a dispositional order. I.O.'s mother (Mother) does not appeal. Father argues that substantial evidence does not support the jurisdictional findings and orders that I.O. is a person described by Welfare and Institutions Code section 300, subdivisions (a) and (b), due to Father's actions.[1] He further contends that the juvenile court abused its discretion in ordering him to attend a domestic violence counseling program as part of his reunification plan.

We find Father's challenges to the juvenile court's jurisdictional findings as to him justiciable. We hold that substantial evidence supports the juvenile court's jurisdictional findings based on domestic violence and, alternatively, on Father's failure to protect I.O. from Mother's drug abuse. Finally, we hold that the juvenile court did not abuse its discretion by requiring Father to attend domestic violence counseling as part of its dispositional order. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Procedural Background**

In October 2020, when I.O. was approximately five months old, the Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300. The Department had received a referral in connection with an open case for I.O.'s half-sibling alleging drug use and domestic violence by both of I.O.'s parents.

---

[1]     All subsequent statutory references are to the Welfare and Institutions Code.

That same month, the Department also filed a request for removal of I.O. from both parents. The juvenile court authorized the removal. Subsequently, the court ordered I.O. to remain detained from her parents.

The section 300 petition alleged jurisdiction pursuant to subdivision (a), "Serious Physical Harm," subdivision (b)(1), "Failure to Protect," and subdivision (j), "Abuse of Sibling." The petition alleged that I.O's parents had a history of engaging in violent altercations, including a specific incident where Father assaulted Mother, causing I.O.'s basinet to fall to the ground with I.O. inside. Second, the Department further claimed that Mother had a history of substance abuse, was a current abuser of methamphetamine and amphetamine, had a positive drug test for methamphetamine and amphetamine in September 2020, and that Father knew or should have known of Mother's substance abuse but failed to protect I.O. The Department additionally alleged that two of I.O.'s half siblings received permanent placement services and three others were prior dependents of the court due to Mother engaging in violent altercations with her former companions and prior drug use.

In April 2021, the court held a combined adjudication and disposition hearing. The court found that, as to Father, I.O. was a person described by section 300, subdivision (a) and subdivision (b)(1), due to his engaging in domestic violence and his failure to protect I.O. from Mother's drug abuse. The court declared I.O. a dependent of the court and removed her from her parents.

The court ordered reunification services for Father only, consisting of six months of drug and alcohol tests, individual counseling to address "case issues, including [domestic violence] and parenting," and a separate domestic violence program.

3

Father timely appealed from the juvenile court's two jurisdictional findings as to him under section 300 and from the court's dispositional order requiring him to attend domestic violence classes.

## II. Evidence of Domestic Violence

There is no evidence that I.O. has suffered any physical harm or illness from the alleged domestic violence.

The evidence as to domestic violence in the Department's initial petition is as follows: An unidentified reporter stated that "[M]other shared that father is violent and hit her all the time." I.O.'s sibling's designated adoptive parent told the social worker that Mother stated that Father attacked her and "accidentally dropped the bassinet with [I.O.] inside it." Mother reported that I.O. was not injured, and the adoptive parent knew of no other domestic violence incidents between the couple. Mother told the adoptive parent about the bassinet incident a few days prior to September 1, 2020, but it is not clear exactly when this incident took place.

In subsequent interviews by the social worker, all prior to the juvenile court's combined jurisdictional and dispositional hearing, I.O.'s sibling's adoptive parent told the social worker that a neighbor "has told her in the past during domestic violence incidents she'd run inside the family home to grab [the] child during the physical incidents." The social worker spoke with that neighbor who reported that the parents argue but the neighbor did not hear the parents engage in "physical altercations." The sibling's adoptive parent also told the social worker that Mother said that father wants to kill her and makes "signs" at her indicating that he will shoot her. Both parents denied any domestic violence.

4

### III. Evidence of Mother's Drug Use and Father's Knowledge

Both Mother and Father have a history of drug use. When the social worker first visited Mother in this matter, the social worker observed a broken glass pipe on the couch that Mother stated she used for tobacco and then later said Father used for tobacco. Then, during the social worker's initial investigation, Mother failed a drug test just days after telling the social worker she no longer used drugs (the test was positive for amphetamine and methamphetamine). Mother failed to appear for subsequent drug tests during the pendency of this case. A witness told the social worker about an incident where Mother appeared under the influence of drugs. The witness also said that Mother admitted to the witness that she was still using drugs. After her drug test came back positive, Mother told the social worker that it was very hard to stop using methamphetamine.

Father was a former user of methamphetamine, which he said he used for about three years and went to a drug treatment program to address. Father could not recall whether he had used methamphetamine with Mother, but said that they may have used it together once. Father was aware that Mother had a history of using marijuana and methamphetamine.

### IV. Prior Interactions with the Department

Before the referral to the Department regarding I.O., Mother had a lengthy history with the Department. According to the Department's petition, Mother has five other children that had been involved in dependency proceedings. In total, from 2007 to 2017, the Department received eight referrals regarding Mother's first five children.

Father has no prior history with the Department as a parent. I.O. is not his biological child, but he has been with Mother since she was pregnant with I.O. and he signed I.O.'s birth certificate. The juvenile court found Father I.O.'s presumed father.

## DISCUSSION

### I.    Father's Appeal Is Justiciable

An appellate court need not address jurisdictional findings as to one parent when the findings as to the other parent are not challenged. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308–310 (*Briana V.*).) Such challenges are generally nonjusticiable because a juvenile court may assert jurisdiction over a child based upon finding that only one parent's conduct triggers section 300. (*Id.* at p. 308; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489–1495.) Accordingly, a reversal as to one parent, even if sustained, would not require reversal of the jurisdictional findings. (*Id.* at p. 1489.)

Nevertheless, we have discretion to address the merits of a jurisdictional challenge by only one parent if the findings: (a) serve as the basis for dispositional orders challenged on appeal, (b) could be prejudicial to the appellant or potentially impact current or future dependency proceedings, or (c) could have other consequences for the appellant beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762 (*Drake M.*); *Briana V.*, *supra*, 236 Cal.App.4th at p. 309.)

Father argues that because the juvenile court's finding of domestic violence serves as the basis for the dispositional order that he challenges in this appeal, we should address the merits. We agree. "Although a dispositional order may reach both parents . . . the order must nevertheless be 'reasonable' and

6

'designed to eliminate [the] conditions that led to the court's [still valid jurisdictional] finding.' [Citations.]" (*In re D.M.* (2015) 242 Cal.App.4th 634, 639 [jurisdictional finding that mother intentionally inflicted serious physical harm was justiciable where it served as the basis for two of three case plan requirements].)

## II. Substantial Evidence Supports the Juvenile Court's Jurisdiction as to Father Due to Domestic Violence

Father contends there is insufficient evidence supporting the juvenile court's jurisdictional findings as to him under section 300, subdivisions (a) and (b). We disagree. There is substantial evidence of domestic violence involving a substantial risk of serious harm to I.O.

Under section 300, subdivision (a), a juvenile court may assert jurisdiction over a child if a "child has suffered, or there is substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent." (*Ibid.*)

Under section 300, subdivision (b)(1), a juvenile court may also assert jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." (*Ibid.*)

" 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings . . . of the dependency court; we review the record in the light most favorable to the court's determinations; and we note

7

that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Father makes two arguments. First, Father argues that because the evidence of domestic violence is uncorroborated hearsay, it cannot, by itself, constitute substantial evidence. The Department does rely on hearsay evidence of Father's domestic violence. Yet, as Father admits, he failed to specifically object to the admission of this hearsay. This failure to object is fatal to his claim that we should reverse because the evidence was hearsay and "[m]ere uncorroborated hearsay does not constitute substantial evidence." (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 689, citing *In re Lucero L.* (2000) 22 Cal.4th 1227, 1243.) At the jurisdictional hearing, the "social study prepared by the petitioning agency, and hearsay evidence contained in it, *is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based.*" (§ 355, subd. (b), italics added.) Only if "a party to the jurisdictional hearing raises a timely objection to the a*dmission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based . . . .*" (§ 355, subd. (c)(1), italics added.)

Accordingly, because Father, while represented by counsel, did not object to the hearsay evidence in the social study, the juvenile court was entitled to rely on it. (See § 355, subd. (c)(1); *In re E.B.* (2010) 184 Cal.App.4th 568, 577, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989 [father failed to object to the hearsay in the social workers report, so juvenile court was entitled to rely on it]); *In re Tracy Z.* (1987)

195 Cal.App.3d 107, 113 ["If there is any substantial evidence, contradicted or uncontradicted, which will support the judgment, we must affirm. This is so even if the judgment is supported by incompetent or otherwise inadmissible evidence admitted without objection"]; cf. *In re B.D.* (2007) 156 Cal.App.4th 975, 981 [describing what constitutes a specific hearsay objection].)

Second, Father argues in the alternative that the physical altercation between the parents resulting in Father accidentally knocking over I.O.'s bassinet is an isolated incident that is insufficient to support the juvenile court's jurisdiction based on domestic violence. We disagree. "Under certain circumstances incidents of domestic violence between a child's parents, if they occur in the child's immediate presence, may support a jurisdiction finding under section 300, subdivision (a)." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 603 (*Cole*), citing *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598–599.) "The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1026.)

Here, the incident of domestic violence that the juvenile court mainly relied upon is sufficient evidence. Jurisdiction "under section 300, subdivision (a), requires evidence of a risk of physical injury 'inflicted nonaccidentally upon the child.' " (*Cole*, *supra*, 70 Cal.App.5th at p. 603.) It is the *risk* of injury that is required, not actual infliction of injury. Where a parent strikes the other parent while that parent is holding the child, causing that child to fall, the Courts of Appeal have found this standard is met. As Division Seven of our court recently noted, "[f]or example, if a father strikes an infant's mother while she is

9

holding the child or an older child intervenes during a fight to protect her mother from her father's abuse, the risk of harm to the child may be properly viewed as nonaccidental." (*Ibid.*, citing *In re M.M.* (2015) 240 Cal.App.4th 703, 720 [substantial evidence supported juvenile court's finding where parents engaged in a physical altercation with child at their feet].) Similar circumstances were present here.

Moreover, the social worker's report cites additional evidence, described above, as to domestic violence, which the court cited for its jurisdictional finding, along with what the juvenile court characterized as "severe minimizing" of the incident where the bassinet was knocked over by both parents. The juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

In sum, substantial evidence supports the juvenile court's finding of jurisdiction based upon risk to I.O. from Father's domestic violence.

### III. Substantial Evidence Supports the Juvenile Court's Jurisdiction Due to Father's Failure to Protect I.O. from Mother's Drug Use[2]

Father also challenges the juvenile court's jurisdictional finding under section 300(b)(1) due to his alleged failure to protect I.O. from Mother's drug use.

---

[2] Having found substantial evidence to support the juvenile court's jurisdiction based on Father engaging in domestic violence, we are not required to address the second reason the court found jurisdiction. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 (*Alexis E.*) [noting that because it upheld the juvenile court's finding of jurisdiction on the basis of father's domestic violence, it need not review the additional basis for jurisdiction of father's drug use]; see also *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875–876.) To conserve judicial resources in the event of any further review of this case, we exercise our discretion to address the second basis for jurisdiction. Courts of Appeal may review the merits of a *second* jurisdictional finding as to one parent even after first upholding the juvenile court's jurisdiction regarding that same parent on another basis. (See, e.g., *Alexis E.*, *supra*, 171 Cal.App.4th at p. 451 [upholding finding of jurisdiction as to father based on domestic violence, and additionally reviewing appeal of jurisdiction based on father's drug use]; *In re L.O.* (2021) 67 Cal.App.5th 227, 238 [upholding jurisdictional finding that father failed to protect children from domestic violence, and also choosing to review second jurisdictional basis of sexual abuse].) This court has also reviewed challenges by one parent as to two different findings of jurisdictions against that same parent. (*In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316–1317 [reviewing one parent's challenges to findings of failure to provide for child generally and of failure to provide for child only at time of hearing].)

Subsection (b)(1) applies to the failure of a parent to protect a child from another parent's substance abuse, providing for jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left." (§ 300, subd. (b)(1).) "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

The record supports the juvenile court's finding of jurisdiction based upon on Father's failure to protect I.O. from substantial risk of harm from Mother's use of controlled substances. There is substantial evidence that Mother abused controlled substances and Father failed to protect I.O. Mother failed a drug test and failed to appear for subsequent tests during the investigation in this case. A witness stated that Mother appeared under the influence and that she admitted to still using drugs.

Father's contentions that he did not know or should not have known of Mother's drug use are unpersuasive. Father was a former user of the same substance, methamphetamine, for about three years. He could not recall whether he had used methamphetamine with Mother, but he said they may have used it together once. Father stated he was aware that Mother had a history of using marijuana and methamphetamine. Thus, Father knew what indications to look for given his own experience, and he should have been on alert that Mother could have been using given her past and taken steps to ensure I.O. was not being left

alone with an impaired parent. He was not entitled to turn a blind eye to the information he had about Mother and simply hope that I.O. would be safe.

Moreover, given I.O.'s young age, Mother's drug abuse created a substantial risk to I.O.'s safety. (*Drake M.*, *supra*, 211 Cal.App.4th at p. 767.) The risk of a parent's substance abuse is very different when the child is of particularly young age, when "drug abuse presumptively constituted neglect. [Citation.]" (*In re J.M.* (2019) 40 Cal.App.5th 913, 922, fn. 7.)

For these reasons, substantial evidence supports the juvenile court's finding of jurisdiction based upon Father's failure to protect I.O. from Mother's drug use.

## IV. The Juvenile Court Did Not Abuse Its Discretion in Ordering Father to Attend a Domestic Violence Program

Finally, Father argues that the juvenile court abused its discretion in ordering him to complete a separate domestic violence counseling program as part of his case plan. Father's counsel preserved this objection.

We review a dispositional order for abuse of discretion. (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311.) The court has broad discretion to fashion dispositional orders for the child's well-being. (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.) While reunification services need not be tied to a sustained allegation, they must be reasonable, and they must be designed to eliminate the conditions that led to the dependency. (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; *In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.)

13

The juvenile court's order that father complete a domestic violence program is designed to eliminate the conditions that led to the dependency, which are detailed above and supported by substantial evidence.  The court did not abuse its discretion.

**DISPOSITION**

We affirm the jurisdictional and dispositional orders.


HARUTUNIAN, J.\*

We concur:


STRATTON, Acting P. J.


WILEY, J.

---

\*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.