Filed 5/1/26  In re J.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.D. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E086737 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J303515, J303516, J303517, & J303518) |
| v. | |
| P.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

P.D. (father) appeals from an order ending the dependency proceedings and granting full custody to mother. He argues this order was an abuse of discretion because the court made it with the mistaken belief it had previously found visitation detrimental. We affirm.

BACKGROUND

This appeal concerns father's four children: J.D. (born 2009), A.D. born (2012), N.D. (born (2014), and J.D. (born 2016).

On October 28, 2024, the department received a referral alleging all four children slept on the floor at their paternal grandmother's house, and that paternal grandmother had sexually abused A.D. and N.D. by touching their testicles. A few days later on November 1 the department received another referral alleging father had sex with his girlfriend while the children were in the room, and that the paternal grandmother had attempted to grope A.D. and N.D. the week prior while father was not home. That same day, the children moved in with mother, and mother contacted law enforcement. Two of the male children told law enforcement paternal grandmother used her hand to reach inside their shorts, but they pushed her hand away. A.D. said this was the fourth time she had tried to touch his genitals, and N.D. said it was the first time. Both said that all the incidents occurred between October 19, 2024 and October 31, 2024. The children all said they did not want to return to living with father.

The department interviewed the children on November 7. A.D. repeated that paternal grandmother tried to touch his genital area four different times and tried to touch

N.D. as well. He also told the department paternal grandmother tried to touch J.D. A.D. said he told father about the incidents, but father did not believe him. He also repeated the allegation that father had sex with his girlfriend while A.D. was in the room, and clarified that he believed father knew he was awake. He told the department he was scared to go back to paternal grandmother's home and live with father. N.D. and J.D. corroborated each of these allegations, including that father and his girlfriend did "inappropriate things" while the children slept in the living room with them and adding that paternal grandmother also tried to touch J.D.'s genitals. The next day, the department spoke to mother and J.D. J.D. said paternal grandmother touched his genitals, both over and under his clothes. He could not say "when it occurred because of how often it was happening."

Between November 8 and 27, the department tried to contact father four times, and father never returned their calls or texts. On November 15 mother told the department she had a temporary restraining order against father.

On January 17 and February 6, 2025, the children participated in forensic interviews. Their statements and allegations against paternal grandmother and father were consistent with their previous statements and allegations.

On January 29, 2025 the department obtained a detention warrant for all four children. Two days later it filed a petition under Welfare and Institutions Code section 300[1] subdivisions (b), (c), and (d). The petition alleged the children were

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions code.

3

sexually abused by paternal grandmother and father, suffered serious emotional damage because of this, and that mother failed to protect them from these harms. The court held a detention hearing on February 3, found the petitions stated a prima facie case, removed the children from father's custody, placed them in mother's custody, and ordered they have no contact with father or paternal grandmother.

Before the jurisdiction/disposition hearing, the department spoke to the children. All reported they were happy in mother's care and did not want to return to father, with some of them expressing that they were afraid of father. The children said they did not want any contact with father.

The court held the first jurisdiction/disposition hearing on March 26, 2025. Father made his first appearance, denied the allegations in the petitions and objected to detention. He also requested predisposition services, a continuance, and a visitation order. In response, minor's counsel told the court it had previously found visits between father and paternal grandmother detrimental, though no such express finding appears in the record. Based on this, the court stated it "would be inclined to continue that previous detriment finding." Father's counsel objected, but argued only that supervised visitation would be appropriate. Father's counsel did not contest the existence of a prior detriment finding. Accordingly, the court continued the previous detriment finding, set a contested jurisdiction/disposition hearing and ordered predisposition services for father.

Father finally contacted the department in April 2025. He told the department that "everything written in [the] reports is false." He accused the children of lying and

4

accused mother of coaching them. He said paternal grandmother did not live with them at the time of the alleged sexual abuse, and that he and his girlfriend had their own room and were not sexually inappropriate in front of the kids.

On June 4, 2025, the court continued the contested jurisdiction/disposition hearing. At the hearing, the court stated "[d]ad is being placed on notice, specifically, that the family law order requested by Minors' counsel is that they will ask the Court to make a determination that visits are detrimental."

Father showed up at the department's offices unannounced the same day, June 4, 2025. He asked to speak to the social worker, but they were not in the office at the time and father refused to wait. On June 20, the father again asked to meet with a social worker, but the social worker was not working that day. As of July 7, 2025, those were the only contacts the department had with father, despite "numerous attempts to get the father to sign the paperwork for pre-disposition services." Because of this father had not been referred to pre-disposition services.

The court held another hearing on July 10, 2025, where it again continued the contested jurisdiction/disposition hearing. At that hearing minors' counsel and the department objected that further visitation would be detrimental. In response, the court ordered that "everything remain[] status quo."

The court heard the contested jurisdiction/disposition hearing on August 6, 2025. Father denied all the allegations and expressed that he wanted to rebuild his bond with the children. He objected to the proposed custody order, and requested weekly two hour

supervised visits. He also objected to the proposed case plan's alcohol abuse and anger management components.

The department and minors' counsel requested the court sustain all allegations against father, and otherwise dismiss the matter and give mother sole legal and physical custody. Minors' counsel also requested a no-contact order between the children and paternal grandmother, as well as a finding that visitation with father would be detrimental. Minors' counsel argued that a detriment finding was appropriate, and supervised visitation inappropriate, because father could say something to the children before the supervisor could intervene and "father is still in denial and coaching the minors." They also expressed concern that he had not participated in pre-disposition services and generally showed poor judgment "about how to behave around the minors." Mother's counsel added "that it appears that the children are thriving under the care of the mother, and that . . . they do not wish to have any contact with their father."

After hearing these arguments, the court stated "I don't think I ever found detriment . . . [s]o what really is being asked of me to do is change a prior order that did allow visits." It then expressed concern that "right now I don't feel like there is sufficient information for the Court to change the prior finding allowing visits unless I missed it. I looked through several times to see if I had ever found detriment." In response, father's counsel stated "I believe there was a detriment finding." When the court asked for help locating that finding, the department directed the court to the March 26, 2025 hearing minute order where it "continued" a nonexistent detriment finding. Looking at that order,

6

the court concluded "because I did make a detriment finding, at this point in time I would find there is no change for that finding today. And I think the risk that [minors' counsel] brings up is still current, and so I will make the detriment finding."

On jurisdiction, the court sustained all the allegations except those against mother. On disposition, the court held that because father lacked a good relationship with the children and had made no efforts to address the concerns which gave rise to the case, that it would be detrimental to award custody or to have visits. It also terminated its jurisdiction over the children, dismissed and discharged the case. It then entered a family law custody order awarding custody of all children to mother and ordering no visitation.

ANALYSIS

Father argues the court's order terminating jurisdiction and assigning full custody to mother was erroneous because it was based on a mistaken understanding of its prior orders. Specifically, father argues that though the court stated it would have ruled otherwise absent a detriment finding, there was no detriment finding, so the court would have ruled differently had it properly understood its orders.

"Visitation between a dependent child and his or her parents is an essential component of a reunification plan, even if actual physical custody is not the outcome of the proceedings." (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580.) "[T]he standards for denial of visitation at detention are similar to those . . . for the suspension of visitation during the reunification period," thus "parental visitation can be denied at detention based on a basic detriment finding." (*In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1103) "It is

7

ordinarily improper to deny visitation absent a showing of detriment." (*Mark L.*, at p. 580.)

We disagree with father that the court erred by relying on a nonexistent detriment finding to support ordering no visitation, because the court did make such a detriment finding. At the detention hearing, the court ordered no-contact between the children and father at the detention hearing, which requires it to have found visitation would be detrimental. Thus "[i]n this case, while there is no *express* finding of detriment . . . the finding here can be implied," by the existence of the court's no-contact order. (*In re Carrie W.* (1978) 78 Cal.App.3d 866, 873.) Moreover, here the court did not merely continue the finding, but found that "visitation between the child and father and paternal grandmother . . . continues to be detrimental," effectively confirming it previously made that finding and continued to agree with it. That the court was briefly mistaken about its own orders at the jurisdiction/disposition hearing does not change what it did in issuing them. Its decision to deny visitation in the exit orders because it had previously denied visitation is therefore not error.

However, even if we concluded the court had not made an implied detriment finding, we would agree with the People that father has forfeited the issue. "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings. [Citations.]" (*In re Dakota H.* (2005)

8

132 Cal.App.4th 212, 221–222.)  This principle also applies to issues regarding visitation. (See, e.g., *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1001.)

Assuming the court did err by not finding detriment, it did so early in this case. The court first continued a previous detriment finding at the March 2025 jurisdiction/disposition hearing.  Specifically, counsel for the department opined that the court "had ordered visits for Father and the grandmother to be detrimental," and based on that the court said it "would be inclined to continue that previous detriment finding." Though father did object to this, he did not object to the lack of a detriment finding. Instead, father's counsel responded they were "[p]lac[ing] an objection for the record," and argued "[i]f Father is given supervised visitation, I do believe that a social worker would be able to supervise those visits appropriately."  Thus, it appears father objected only to the court's decision on the merits; they did not object that the decision was unlawful, and did not attempt to correct the record about whether the court had made a detriment finding.

From this point in March 2025 until the court's orders terminating jurisdiction in August 2025, father's counsel did not again object to the court's visitation orders or attempt to point out the alleged lack of a detriment finding except to argue for a more liberal visitation regime at the jurisdiction/disposition hearing.

Indeed, in the last opportunity to correct the alleged error father's counsel not only failed to object, but actively insisted the court had not erred.  At the

9

jurisdiction/disposition hearing, the court said it believed it never made the necessary detriment finding and was therefore inclined to order visitation. Father—not minor's counsel or the department—then insisted the court *had* made the requisite detriment finding, causing the court to change its mind. Thus, not only did father fail to object to the court's findings or otherwise try to correct the alleged error, he actively participated in perpetuating it despite the court's own efforts to fix it.

Accordingly, we conclude the court did not err in relying on a previous detriment finding to enter no visitation exit orders, either because it did make the necessary finding or because father has forfeited his right to challenge the alleged error.

## DISPOSITION

We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:


MILLER _____
Acting P. J.


CODRINGTON _____
J.